## HASKELL *vs.* BREWER.

The purchase of the writ is not to be regarded, under all circumstances, as the commencement of the suit.

If, at the time of making a tender, the debtor has no knowledge of the commencement of a suit, and the creditor do not inform him thereof, nor make claim of costs, but refuse to accept the amount tendered solely on account of its insufficiency to pay *the debt*, it may be regarded as a *waiver* of all claim for costs.

By contract between A and B, the former agreed to transport in his vessel, for the latter, a quantity of timber from *Newburyport* to *Robbinston*, for a stipulated price, B agreeing to aid and assist in unlading at the port of destination. In an action to recover the freight, it was held that B could not recover damages for the detention of the vessel at R. occasioned by B's refusing to aid and assist in the unlading, under a general count in *indebitatus assumpsit* for the freight, or *quantum meruit* for the same.

This was an action of assumpsit. The writ contained three counts : 1. *indebitatus assumpsit* on account annexed — 2. for the freight of certain goods from *Newburyport* to *Robbinston*, and for the wharfage and expenses in taking care of said goods — and 3. *quantum meruit* for the freight, hauling and taking care of the same goods.

The account annexed was as follows, viz :

" To freight on 25 tons of timber from *Newburyport* to
"     *Robbinston*, at $4,  -     -     -    100,00
" To 4 thousand trunnels do.     -     -    12,00
" To four wharfages on the same,    -     -    12,50
" To expense of hauling,     -     -    5,00
" To expense for waiting for freight of the vessel,  -    25,00
" To taking care of it,     -     -    10,50

$165,00

The general issue was pleaded and joined, and also a tender of $68,93. The tender was admitted by the plaintiff and the money taken out of Court by him.

It appeared that a small portion of the timber, although unladed, was retained by the plaintiff to secure the payment of his freight, and was not delivered until 10 o'clock in the evening of the 9th of *May* : — after which, on the same evening, the writ

was served. It appeared further, that the writ was sued out as early as 10 o'clock in the forenoon of the 9th — and that the tender was not made until 3 o'clock in the afternoon of the same day.

The plaintiff's counsel contended, that the sum tendered should have been sufficient to pay the sum due and the price of the writ. But it appearing in evidence, in addition to the foregoing circumstances, that when the tender was made, the plaintiff did not inform the defendant that he had commenced a suit, nor object to the tender on that account, merely saying that "it was of no use to make a tender as he should not accept of it," — and it not appearing that the defendant had any knowledge of the suit, *Parris J.* before whom the cause was tried, instructed the jury that the plaintiff could not maintain the suit if they found the tender sufficient for all the debt due without the costs.

There was also evidence tending to show that the plaintiff's vessel was detained at *Robbinston,* by the defendant's neglecting to fulfil his contract as to the manner of her unlading; and to show that the defendant did not assist to unlade as he had agreed — but the Judge instructed the jury, that there being no special count in the writ, nothing could be recovered in this action on that account.

Under these instructions the jury found for the plaintiff, assessing damages in the sum of $68,93, being the sum tendered by the defendant — and that the defendant did not promise beyond that sum.

If the instructions were erroneous the verdict was to be set aside and a new trial granted.

*J. Shepley,* for the plaintiff, insisted that the tender should have been sufficient to cover the price of the writ, and thereto cited *Jewett* v. *Felker,* 2 *Greenl.* 339; *Johnson* v. *Farwell,* 7 *Greenl.* 370; *stat.* of 1822, *ch.* 182.

2. No special count was necessary. There was but one contract. If the plaintiff could recover for the freight, he could for the matter excluded. Having performed the contract fully on his part, the plaintiff might well recover on general *indebitatus assumpsit. Baylies* v. *Fettyplace,* 7 *Mass.* 329 ; *Felton* v. *Dickinson,* 10 *Mass.* 287 ; *Jewell & al* v. *Schroeppel,* 4 *Cowen,* 564;

Haskell *v.* Brewer.

*Bank of Columbia* v. *Patterson*, 7 *Cranch,* 299; *Chitty on Pl.* 334–9; *Jones* v. *Hoar,* 5 *Pick.* 285; *Huntington* v. *American Bank,* 6 *Pick.* 340.

*N. D. Appleton,* for the defendant, in regard to the sufficiency of the tender without the costs, cited, *White* v. *Bailey,* 3 *Mass.* 272; *Byrne* v. *Crowninshield,* 1 *Pick.* 263; *Wells* v. *Fish & al.* 3 *Pick.* 74; *Badger* v. *Phinney,* 15 *Mass.* 359; 6 *Dane,* ch. 196; *Wood* v. *Newton,* 1 *Wilson,* 141; *Wright* v. *Reed,* 3 *T. R.* 554; *Warren* v. *Main,* 7 *Johns.* 476; 3 *Stark.* 1390, note; 5 *Dane,* 486; *Slingerland* v. *Morse,* 8 *Johns.* 474; *Thomas* v. *Evans,* 10 *East,* 101; *Douglass* v. *Petrick,* 3 *T. R.* 683; *Codman* v. *Lubboch,* 5 *Dow. & Ry.* 289; *Harding* v. *Davis,* 2 *Car. & Payne,* 77; 2 *Maule & Sel.* 141; 3 *Stark. Ev.* 1392; 5 *Taunt.* 307; *Alexander* v. *Brown,* 1 *Car. & Payne,* 228; *Brown* v. *Dysinger,* 1 *Rawle,* 408; *Borden* v. *Borden,* 5 *Mass.* 67; *Nourse* v. *Snow,* 6 *Greenl.* 208; *Veazy* v. *Harmony,* 7 *Greenl.* 91; *Boyden* v. *Moore,* 5 *Mass.* 373; *Hallet* v. *East India Co.* 2 *Burr.* 1120.

To show the necessity of a special count in the writ, he cited the following authorities: 1 *Chitty Pl.* 243–294–297–309; 5 *Taunt.* 302; 2 *East,* 145; 1 *Hen. Bl.* 287; 4 *East,* 147; 1 *New R.* 330; 2 *T. R.* 321; 10 *Mass.* 287; 7 *Cranch,* 303; 9 *Mass.* 198; 18 *Johns.* 451; 2 *Mass.* 398; 13 *Mass* 285; 1 *New R.* 104; 16 *Mass.* 161; *Yelv.* 76; 6 *Con. R.* 176; 3 *Johns.* 342.

PARRIS, J. at a subsequent term, delivered the opinion of the Court.

There is no suggestion that the defendant knew, at the time of making the tender, that a writ had been issued against him;—and from the written evidence in the case, particularly the deposition of *Rogers,* it is apparent that, at the time of the tender, the plaintiff had not performed all that he deemed to be necessary to give him a right of action. Subsequent to the making of the writ and the tender, he delivered the timber, on which the freight is charged; and it was not until after this delivery that he manifested any intention to have his writ served. Suppose that, apprehending the necessity of a suit, he had purchased his writ be-

fore his arrival at *Robbinston*, or previous to his departure from *Newburyport*, would it be contended that this was such a commencement of the action as would deprive the defendant of the right to tender payment of the freight without including the cost of the writ, at any time previous to the delivery of the timber? We think not. Under such circumstances, at common law, the defendant might have tendered the amount actually due and such tender would have been good, notwithstanding nothing had been tendered for the cost of the writ.

The case of *Jewett v. Felker,* cited for the plaintiff, is altogether different. There, the defendant was a mortgagor. His right of redeeming had been sold on execution. The purchaser, forthwith, brought his writ of entry to obtain possession; and afterwards, and within the year, the defendant tendered to the demandant the purchase money and interest, pursuant to the statute; but did not offer to pay the costs of the suit. It was holden that the tender was no bar to the action. The action was pending in Court, and, by the common law, no available tender could then be made; nor could any be made under the statute, unless it included all costs up to the time of such tender. The question which arises here, as to the commencement of the suit, was not considered or presented in *Jewett* v. *Felker.*

The case of *Johnson* v. *Farwell,* does not support the position taken for the plaintiff, that the time of making the writ is, in all cases, to be considered the commencement of the suit. A writ may be made, to be used or not, as circumstances may thereafter require. It may be filled up and kept in the plaintiff's pocket for months without any determination on his part to have it served. The purchase of a writ is presumptive evidence of an intention to effect a service, but this presumption may be rebutted by the facts in the case; — as if it was purchased before the cause of action arose, or service was delayed until the occurrence of an event upon which the plaintiff's decision, as to effecting a service, depended. In such cases, according to *Johnson* v. *Farwell,* and the authorities there cited, the action would not be considered as commenced until there was a *bona fide* intention of having the writ served. This seems to be in accordance with the whole current of authorities in *New York.* In the case at bar, the

tender, which the jury have found was sufficient, was made previous to the delivery of the timber, and while the plaintiff was claiming to hold it as security for the freight. When made, no intimation was given by the plaintiff that he had purchased a writ, or that he claimed any thing as legal costs arising from the commencement of a suit, or that he intended to resort to any other method than the one he was pursuing, viz. to hold the timber for the freight. The conduct of the plaintiff was such as to induce the defendant to believe that the refusal to accept the amount tendered was solely on account of its insufficiency to pay the debt;—and if, previous to this, he had actually purchased a writ with an intention to have it served, still his concealing the fact from the defendant, and by his conduct inducing a belief that nothing was claimed as costs, giving no intimation that any had accrued, or were exacted, may well be considered as a waiver, by him, of all claim to any costs.

The next question presented by the report is, whether the plaintiff, under the counts in his declaration, could recover for demurrage or detention of his vessel at *Robbinston,* occasioned by the defendant's neglecting to fulfil his contract, as to the manner of her unlading. The first count is general *indebitatus assumpsit* on an account annexed, which specifies six items, one of which is, " To expense for waiting for freight of the vessel." This is understood to be a detention at *Newburyport,* and for which, under the instructions to the jury, the plaintiff recovered, if his charge was supported by proof.

The account annexed contains no charge for detention at *Robbinston,* or for any failure in assisting to discharge the timber, nor any intimation of claim on that account. From any thing disclosed in the first count, or the account annexed, to which it refers, the defendant could not have been apprized that any question was to be raised as to the detention at *Robbinston.*

The second count is *indebitatus assumpsit* for the freight of certain goods, wares and merchandize from *Newburyport* to *Robbinston,* and for wharfage and expense of taking care of said goods. The third count is a *quantum meruit* for the freight, hauling and taking care of the same goods.

One object of a declaration is to give the defendant notice what he is to answer to; — to apprize him of what is meant to be proved, in order to give him an opportunity to traverse it.

We find nothing in either of the counts in this case from which it can even be inferred that the plaintiff claimed for demurrage at *Robbinston.* For every item in his account he was permitted to recover, so far as it was supported by proof, and if the jury had been instructed to include any thing further in their verdict, such instruction would have been manifestly erroneous.