ROUYER, ADMINISTRATRIX, ETC., v. MILLER.

[No. 2,080. Filed May 14, 1896. Rehearing denied December 30, 1896.]

TRIAL.— *Conflict Between General Verdict and Answers to Interrogatories.*—Answers to interrogatories control the general verdict only when the antagonism between them is so great that it cannot be removed by any evidence admissible under the issues. *p. 520.*

EVIDENCE.—*When Sufficient to Show Note to be in Hands of Attorney for Collection.*—Evidence showing that the payee of a certain promissory note had died, and that such note had come into possession of the attorney for the administratrix of payee's estate; that such attorney treated with the maker in reference to the payment of the note, and advised with the son of the decedent in reference to a credit claimed; after which said attorney refused a tender made by maker, and finally with other attorneys brought suit on the note, is sufficient to show that the note was in the hands of said attorney for collection at the time the tender was made. *p. 521.*

ATTORNEY'S FEES.—*When May be Recovered.*—Where a note stipulates for the payment of attorney's fees, such fees are recoverable if the note has been placed, after maturity, in the hands of an attorney for collection, and a liability for services has been incurred by payee. *p. 522.*

SAME.—*When the Amount of Fees is Fixed in Note.*—The amount of attorney's fees fixed in a note is *prima facie* the sum recoverable, subject to be reduced by proof that such sum is unreasonable and excessive, or that the plaintiff has not incurred a liability to pay the full amount. *p. 522.*

TENDER.—*When Must Include Attorney's Fees.*— Tender of the amount due on a promissory note must include attorney's fees, when the note calls for such fees, and is in the hands of an attorney for collection, and there is a dispute about the amount due. *pp. 523–525.*

SAME.—*When Need Not Include Attorney's Fees.*— Where tender is sought to be made by the maker of a note of the full amount thereof, and the holder of such note should refuse to give information concerning the attorney's fees when called for, or should the

debtor be ignorant of the employment of the attorney, or the tender be refused upon other grounds, and he be thereby misled, the court would doubtless protect the debtor in making such tender.  *p. 525.*

TRIAL.—*Right to Open and Close.*—Whenever the plaintiff has any proof to make either, as to the facts necessary to establish a case, or as to the amount of damages recoverable, he is entitled to the open and close.  *p. 124.*

EVIDENCE.—*Account Book, When Admissible.*—A page of decedent's account book is not admissible in evidence without proof as to when and where the entries were made, and that they were made in decedent's handwriting.  *pp. 526, 527.*

From the Marion Superior Court.  *Reversed.*

*Ayres & Jones* and *Denny & Taylor*, for appellant.

*W. H. H. Miller, F. Winter* and *J. B. Elam*, for appellee.

GAVIN, C. J.—Appellant sued appellee upon two promissory notes executed by him to John B. Mazelin, of whose estate appellant is administratrix. Each note is dated February 27, 1878, one being for $1,000.00 and the other for $10.00. The answers were payment,—payment reducing the sum due to $700.00 upon May 16, 1891, and a tender of that amount kept good by bringing it into court; a set-off of $40.00; and, as to the $10.00 note, that it was given for usurious interest. A trial by jury resulted in a general verdict for appellee with certain answers to interrogatories.

The answers to interrogatories control the general verdict only when there is between them and it a conflict irreconcilable upon any reasonable hypothesis within the issues. In determining this question we look, not to the evidence which was given, but to that which might have been introduced. *Simons, Admr., v. Beaver*, 15 Ind. App. 510. There was a general plea of payment. The special answers find that upon a certain day $600.00 was paid in addition to $550.00 previously paid. They do not find that this is all that

was paid. It is wholly consistent with all the answers that the entire balance may have been paid on that day. Appellant was not, therefore, entitled to judgment upon the verdict as asked for.

The notes contained absolute provisions for the payment of attorney's fees of 5 per cent. upon the amount due.

The evidence is undisputed that upon May 16, 1891, appellee tendered to Judge Ayres, who then had possession of the note as appellant's attorney, $700.00. Upon this tender appellee relies. It is also proved that appellee had shown to Ayres & Jones a receipt for $600.00, for which he claimed an additional credit, and that they had sent for Edward Mazelin, a son of decedent, and showed it to him and consulted with him as to whether they should allow it. The record further discloses that Ayres & Jones did afterward, with other attorneys, begin and prosecute this action. If attorneys' fees are to be included in the amount due upon the $1,000.00 note, May 16, 1891, it is clear that the tender was not sufficient. Appellee's position is, first, that there is no evidence that the note was in the hands of attorneys for collection so as to impose upon appellant any liability therefor; second, that even if it were, there is no evidence as to the value of such services; third, that the tender was refused upon other grounds and appellant cannot now change front.

In none of these propositions do the facts and law applicable thereto, as we view them, sustain appellee. As we have indicated, there is evidence that the note was in the possession of Ayres & Jones as attorneys for appellant, that they were treating concerning it with appellee and advising with a son of decedent with relation to whether they should accept a $600.00 receipt. The tender was made to the attorneys and they brought suit on the note. There is here sufficient

evidence to justify, if not absolutely to require a finding that the note was in the attorneys' hands for collection at the time of the tender. In fact, unless it was, we are at a loss to see how the tender could be effective. *King* v. *Finch,* 60 Ind. 420. For whatever services had been rendered, the attorneys were certainly entitled to compensation. Had they accepted the $700.00, and thus collected the money, appellant would have been under legal obligation to pay them therefor. Neither the law nor the general experience of mankind will authorize us to presume that they were rendering these services gratuitously. We are in full accord with the assertion of appellee's counsel that agreements in notes for the payment of attorney's fees are contracts of indemnity purely, and cannot be made a cloak for speculation and profit by the holder, whether the amount be specified in the note or not. *Kennedy* v. *Richardson,* 70 Ind. 524; *Goss* v. *Bowen,* 104 Ind. 207; *Harvey* v. *Baldwin,* 124 Ind. 59; *Starnes* v. *Schofield,* 5 Ind. App. 4; *Moore, Admx.,* v. *Staser,* 6 Ind. App. 364; *Judson* v. *Romaine,* 8 Ind. App. 390.

It must also be regarded as settled by the case of *Moore, Admx.,* v. *Staser, supra,* that attorney's fees are recoverable where a note has been placed, after maturity, in an attorney's hands for collection and a liability to him for services has been incurred.

We are further of the opinion that both the earlier and later authorities establish and recognize that where the amount is fixed in the note this is *prima facie* the sum recoverable, subject to be reduced by proof that this is unreasonable and excessive, or that the plaintiff has not really incurred a liability to pay the full amount.

In *Smiley* v. *Meir,* 47 Ind. 559, the Supreme Court considered the effect of a stipulation to pay a fixed sum as attorney's fees, not upon the assumption, as

counsel would imply, that the contract was not one' of indemnity and that the sum named was incontrovertible; on the contrary, the court expressly declines to determine that question, and says: "*Prima facie*, we think, the amount or rate stipulated for is to govern in a suit on the note, and in this case the amount or rate was not excessive. * * * * No other evidence [than the note] of the amount of the fee was introduced, or was necessary." This holding was approved in *Glenn* v. *Porter*, 72 Ind. 525.

In *Toler* v. *Keiher*, 81 Ind. 383, a special verdict allowed 5 per cent. attorney's fees on principal and interest. That was the amount named in the note. There was in the verdict no finding as to the value of the services, yet the verdict, as to the amount of recovery, was approved.

In *Starnes* v. *Schofield*, *supra*, this court impliedly recognized the rule here asserted. "Unless the amount of the attorney's fee is specified in the note, before the holder can recover, he is required to prove what a reasonable fee would be."

The appellee in this case was fully informed that the note was in the hands of the attorneys. He could not but know that it was in their hands for collection, because he was dealing with them and proposing to pay them the money. He was at this time represented by, and himself acting through attorneys. By the terms of his contract he had agreed to pay 5 per cent. attorney's fees. The appellee knew also that there was a controversy between the parties, and it is evident that the employment of attorneys by appellant was not a mere subterfuge to impose additional burdens upon the debtor. He knew, or ought to have known from the circumstances, that attorney's fees had been incurred and his liability therefor thereby fixed. If he thought 5 per cent. was too much he should have

so shown. Since by fixing a rate in the contract he obtains the benefit of thereby limiting the amount he can be required to pay, even though the payee expends much more, we see nothing harsh or inequitable in declaring this to be *prima facie* the proper amount.

We are unable to perceive how any logical distinction can be made, as to this question, between cases where suit has been brought and those where there has been none. If the expense has actually been incurred by the holder, that fixes the liability, the amount of it being then determined in either instance according to settled rules of law.

Were we not right in this proposition that the rate specified must govern *prima facie*, then appellant was certainly entitled to the open and close. If, notwithstanding the provision in the note, he was required to prove the actual value of the attorney's fees, then the new trial should have been granted for refusing to give him the open and close, for the law is established in Indiana that whenever the plaintiff has any proof to make, either as to the facts necessary to establish a case or as to the amount of damages recoverable, he is entitled to the open and close. *Reynolds* v. *Baldwin*, 93 Ind. 57; *Hyatt* v. *Clements*, 65 Ind. 12; *Camp* v. *Brown*, 48 Ind. 575; *Fetters* v. *Muncie Nat'l Bank*, 34 Ind. 251.

*Lindley* v. *Sullivan*, 133 Ind. 588, does not sustain counsels' contention to the contrary. There the note did not specify the amount or rate of fees, but the answer expressly admitted plaintiff's right to the full amount of attorney's fees claimed in the complaint. This admission obviated the necessity of proof. Here there is no such admission.

We are not able to perceive how the debtor is exposed to great hardship by imposing upon him the duty of making inquiry as to the amount of the attor-

Rouyer, Administratrix, etc., v. Miller.

ney's fees, and ascertaining them, especially, when he is dealing by his own attorneys with the creditor through his attorneys.

The Supreme Court of Vermont, in *Smith* v. *Wilbur*, 35 Vt. 133, passed upon a proposition closely analogous to this. There a tender is authorized after suit. It was made, but did not include certain costs of witnesses, and was held insufficient. The court says: "The fact that the plaintiff did not inform the defendant that he had summoned these witnesses was of no importance. If the defendant desired any information as to the amount of the plaintiff's costs from him, he should have inquired, for he knew a suit had been brought and some costs had accrued, and if he chose to make a tender without inquiry, the plaintiff certainly was not in fault."

It is not a new or novel doctrine that when one proposes to make to another a tender of the amount due him, he should take steps to ascertain the correct amount. In *Helphrey* v. *Chicago, etc., R. R. Co.*, 29 Ia. 480, the defendant relied upon a tender of the value of a colt which had been killed, and was adjudged by the jury to be worth $60.00. The company had only tendered $55.00. The court said: "If a party tender less than is due his creditor, he does so at his peril."

So, too, in this State, where one desires to tender damages under sections 6568, 6570, Burns' R. S. 1894 (4852, 4854, R. S. 1881), he must determine the proper amount and tender enough, if he would save himself from further costs.

If the holder of the note should refuse to give information concerning the attorney's fees when called for, or, should the debtor be ignorant of the employment of the attorney, or the tender be refused upon other grounds and he be thereby misled, the court would doubtless protect him, as was done in *Haskell* v. *Brewer*, 11 Me. 258, and *Nelson* v. *Robson*, 17 Minn. 284.

That there may be no room for misunderstanding as to the evidence relating to tender we set it all out in full:

First. It was agreed that May 16, 1891, the defendant tendered plaintiff $700.00, and kept this tender good by paying the money into court.

Second. There was the testimony of Howard Cale, who was connected with the office of Winter & Elam, May 16, 1891.

"Q. I will ask if you and Mr. Miller made any tender of money on account of this note to Judge Ayres, who had possession of the note as plaintiff's attorney? A. Yes, sir; we did.

Q. When was it? A. It was May 16, 1891.

Q. What was the amount of the tender? A. It was $700.00.

Q. And Judge Ayres at the time had the note as plaintiff's attorney? A. Yes, sir.

Q. And they declined to receive it? A. Yes, sir."

Thus there is entire absence of any evidence as to the ground of the refusal of the tender, or as to what was said by the parties. The evidence discloses only that the tender was made and that it was declined. It does not show that any cause or reason whatever was assigned for such refusal, neither does it show that none was given. We might reasonably infer that one cause operating upon the minds of appellant and her counsel was the difference as to the $600.00 credit; but there is not a word to indicate that this was the only reason, or that it was assigned by appellant's attorney as the basis or ground of the rejection.

There was no error in refusing to receive in evidence the page 80 of decedent's account book, if for no other reason, because there was, at that time, no proof that the entries were in decedent's handwriting, nor when they were made. Neither does it appear to us that

they were necessarily parts of the same account introduced by appellee.

The law as to the introduction of account books is, in this State, in considerable confusion. *Wilber* v. *Scherer*, 13 Ind. App. 428. The page in question, however, does not seem to us really an account within the general acceptation of the term, kept in the regular course of business, but rather a mere memorandum. While it appears that Edward Mazelin wrote the indorsement reducing the interest, there is nothing to show that he was present when the agreement was made or had any actual knowledge of the consideration therefor.

Some other questions have been argued, but they may be easily obviated by amendment, or may not arise upon another trial. We do not, therefore, take them up.

Judgment reversed, with instructions to the trial court to grant a new trial.

REINHARD and LOTZ, JJ., dissent from that part of the opinion relating to attorney's fees.

## ON PETITION FOR REHEARING.

GAVIN, J.—Impressed not only with the ability, but with the earnestness with which counsel for appellee urge their petition for rehearing we have endeavored to give to the questions involved that further consideration which they demand, but are still unable to accede to the correctness of the positions assumed by counsel.

The note in suit was dated in 1878, and was due in twelve months. December 8, 1880, the following endorsement was entered upon it. "Interest on this note reduced to 8 per cent. from date, and time extended while the interest is kept paid to the present amount."

It is now contended that by virtue of this endorse-

ment the time was so extended that the note was not due until appellee, by his tender, elected no longer to keep the loan, and that consequently no attorney fees chargeable to him could be incurred prior to such default.

It would be sufficient answer to this position to say that upon the original presentation of this cause no claim was advanced that by reason of this endorsement the debt was not due when the note went into the hands of Ayres & Jones, and that it is now too late for such contention to be heard. Passing that question and any others that might be raised as to the merits of this contention, and assuming that, as claimed by appellee, there was no default upon his part, and no maturing of the note so long as the interest was kept down to the amount then due, the time of the extension had long passed by, and the note matured by reason of his failure to keep the interest down to that sum.

According to the computation of appellee's counsel, attached to their original brief, the interest due December 8, 1880, was $222.44. According to the same calculations the interest due July 31, 1886, was $224.17, and the amount due April 15, 1887, was $230.60.

Thus there was default in the payment of interest at least twice prior to the death of the decedent.

It is urged that since the evidence discloses but one subject of dispute prior to the tender, we should assume or infer that this was the only matter then in controversy. One objection to this position is that the evidence introduced does not purport to cover or include all that took place between the parties relative to the note before the tender. It shows, indeed, that there was a dispute about the $600.00, but it does not show that the controversy was limited to that point.

Rouyer, Administratrix, etc., *v.* Miller.

Moreover, it does affirmatively appear that at the time of the trial there were other matters in dispute, notably, as to the rate of interest from its date to the time of the endorsement. So far as is made to appear by the evidence, the attorney's fees may have been specifically demanded at the time of the tender. It may be possible that such fact, if true, being within the knowledge of the appellant, the jury might, from his failure to so prove, have inferred the nonexistence of the fact; but counsel require of us that we should go much further and declare as a matter of law that this was the case. We do not feel authorized so to do.

It is further contended that, because the evidence discloses no other disputed matter at that time, we should conclude that no services were rendered save those touching the $600.00 payment, and that the employment of the attorneys was limited to the adjustment of that matter alone. As to this proposition, like the other, the utmost which appellee could demand would be that the jury might thus conclude, while to sustain appellee's position we must declare that this is the only inference fairly deducible from all the facts and circumstances of the case. We are, however, of opinion that it was at least fairly inferable that the note was in attorney's hands generally for collection.

That, under the facts of this case, the insufficiency of the amount of the tender was not waived, we still think clear. In each of the cases cited to sustain the opposite contention (where the question involved was one of tender), save *Lambert* v. *Miller*, 38 N. J. Eq. 117, it was held that some objection to the tender was waived because the party had placed his refusal to accept it upon some other ground, or had done some act which prevented a formal and proper tender.

Here, the evidence is wholly silent as to whether or

not any reason for the refusal was given. It simply shows that the offer of so much money was made and the offer declined.

Appellant is not shown to have done anything to mislead appellee or throw him off his guard; so far as appears, they were dealing with one another at arm's length, each one upon his guard and each one standing upon his legal rights. If any different state of facts existed the evidence has not been produced to establish it.

Petition overruled.

## DISSENTING OPINION.

REINHARD, J.—I am wholly unable to agree with my brethren of the majority upon the rule of law enunciated in the prevailing opinion, concerning the question of fees for plaintiff's attorney, the payment of which is stipulated for in a promissory note or other contract by the maker thereof.

Under the decisions in this State, cited in the opinion of the majority, attorney's fees are given by reason of the stipulation in the contract as an indemnity to the plaintiff for money paid by him or for which he has become liable, and he is not entitled to judgment for such fees unless an attorney was, of necessity, employed to collect the debt. *Judson* v. *Romaine*, 8 Ind. App. 390. I very much doubt whether a plaintiff can recover such fees at all unless suit is actually brought upon the obligation in which the promise to pay such fee is contained. Originally in this State the validity of the agreement to pay the fee always depended upon the express condition that a suit be brought upon the instrument. Later the statute was enacted providing that no attorney's fee shall be collected that depends upon any condition set forth in the contract. See *Churchman* v. *Martin*, 54 Ind. 380.

Rouyer, Administratrix, etc., v. Miller.

In no instance is it conceivable how a fee can rightfully be collected by the plaintiff without an implied condition that services be rendered by an attorney in connection with the collection of the note. But while there is such an implied condition in every such promise to pay attorney's fees, it is held by the Supreme Court that this condition must not be expressed in the contract, or the promise is void under the statute. It was generally understood at the time the statute referred to was enacted, that it was intended to do away with the making of such contracts entirely; but according to the views of the Supreme Court, this intention was not so expressed as to become operative. But if it was not intended to do away with such contracts entirely, it certainly cannot be held that the enactment of the statute in question was intended as an enlargement of the scope of the rule by which such fees were collectible and to extend it to cases in which the right did not before exist. And yet, the effect of the holding of the principal opinion, as it appears to me, will be to greatly extend the right of collecting such fees instead of curtailing it.

Assuming, however, that attorney's fees may be collected, even when no suit has been brought, I still think the burden rests upon the plaintiff to prove, before he can recover fees claimed to have accrued before suit, that he had employed an attorney, that the latter had rendered some services, and what such services were worth. The rule that when the note provides for the payment of a certain per cent. of the principal sum, such per cent. is *prima facie* the correct amount due on account of such fees, is not applicable, in my judgment, to fees accrued before suit. How could the maker of the note, if such were the rule, ever know what amount to tender to the holder of the note for his attorney's fee? How could he know

what the proper amount of the fee was? Or, is he required by the law to go to the holder and obtain that information? That the rule referred to is correct only when applied to fees charged for services rendered after suit or in connection therewith, I think is clear. In that case the court can take judicial notice that the attorney has rendered the services because it sees him in the performance thereof. The mere fact that the note is in the hands of an attorney for collection is only *prima facie* evidence, at best, that some legal services have been rendered. It furnishes no measure by which the value of the services can be judged. In my view of the law, the plaintiff has not overcome the presumption against him on the question of attorney's fees until he has shown what services were rendered and the value of the same. When the debtor goes to the plaintiff or his attorney to discharge his obligation, he is not ordinarily presumed to know that there is an attorney's fee due on the same, and even if he were, he cannot be held to know the value thereof. If such services have been rendered, the plaintiff or holder of the note is in a far better position to know that fact, and to know the value of the services, than is the debtor, and common honesty and fair dealing require that if the payee or holder of the instrument has any such claim, that he assert it when a tender is made of the amount supposed to be due. If nothing is said by the parties at the time of such tender about attorney's fees, and the tender is refused upon other grounds, or is refused without assigning any reason, I think the plaintiff must fail in the recovery of such fees. I think it is against the plainest principles of public policy and natural justice to hold that a debtor must ascertain at his peril whether or not anything is due from him for counsel fees before suit is brought, and, if so, how much. *Prima facie*, the holder of the

note is not entitled to collect such fees, and not at all unless liability for the same has been incurred, and if that is the case, he must inform the debtor thereof, and also of the amount claimed by him before he can put him in default.

If the logic of the majority opinion be correct, the debtor can be required to pay the attorney fee, whether he has any notice that the instrument is in the hands of an attorney for collection or not. Suppose a note due on a certain day is, immediately after maturity, placed in the hands of an attorney for collection. The payer goes to the holder to liquidate it. The latter, however, refuses to accept the principal and interest, but gives no reason for such refusal. Now, if the principal opinion be correct, the debtor is bound to know at his peril that the note has been placed in the hands of an attorney for collection, and that there is due a certain amount from him as a fee for such services, and he must make the holder of the note a tender therefor, being sure to tender enough, or be subject to the payment of costs. If, as in the present case, the amount stipulated be 5 per cent. of the principal and interest due, then the debtor must tender that amount for such fees, unless he can make a correct guess of the value of such services, if the sum be less than 5 per cent. I do not believe an interpretation should be adopted which would lead to such a result.

We are dealing here with a system and not a single case merely, and the question is, whether the court shall by judicial construction still further enlarge the right of the plaintiffs to collect counsel fees in cases in which the plain letter and spirit of the law do not require it, or whether we shall construe the law strictly as against further enlargement of such right, and thereby, at least, place some check upon the abuse to which the system is subjected. I for one am not

willing to go further in the construction of the law in question than our courts have already gone, unless the Supreme Court by its future decisions makes it obligatory upon us to do so.

In the present case there was not a particle of evidence as to the amount expended for attorney's fees or the value thereof, nor was there a word said to the appellee when the tender was made as to any attorney's fees being due. Under these circumstances, the appellant cannot question the sufficiency of the tender; and the instructions given by the court state the law correctly.

For these reasons, I respectfully dissent from that portion of the principal opinion which relates to the question of attorney's fees.

LOTZ, J.—I concur in the opinion of REINHARD, J.