## JOHNSON ET AL. *v.* ZIMMERMAN ET AL.

[No. 6,374.  Filed April 23, 1908.  Rehearing denied June 25, 1908.]

1. APPEAL.—*Record.—Presentation of Questions.*—Unless the questions discussed are properly raised in the record they will not be considered on appeal. p. 168.

2. EVIDENCE.—*Documentary.—Exclusion.—Presentation of, On Appeal.*—Where a written instrument offered in evidence is excluded by the trial court it cannot be considered on appeal unless copied into the record, mere statements of counsel in an offer of proof being insufficient. p. 168. .

3. EVIDENCE.—*Account Books.*—*Appeal.*—*Record.*—In a suit wherein an account book and check stubs were sought to be introduced in evidence and such writings purported to record transactions between defendants' decedent and third persons, it was necessary that facts be shown making such writings competent in favor of the offerer. (For collection and review of Indiana authorities on the "shop-book rule" of evidence, see concurring opinion.) pp. 168, 170.

4. NEW TRIAL.—*As of Right.*—*Quieting Title.*—*Joinder with Other Causes.*—*Decision.*—Where a paragraph of complaint for quieting title is coupled with a paragraph for other relief, but the decision is solely upon the paragraph for quieting title, a new trial as of right is demandable. p. 169.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Suit by Alpheus A. Zimmerman and another against Jeannette G. Johnson and others. From a decree for plaintiffs, defendants appeal. *Reversed.*

*J. D. Osborne,* for appellants.

*James L. Harman* and *Anthony Deahl,* for appellees.

RABB, J.—Appellees were plaintiffs in the court below. Their complaint is in two paragraphs. The first is in the usual form of a complaint to quiet title to certain real estate described therein; the second averred that Ruel M. Johnson was, in his lifetime, the owner of the real estate described in the complaint; that he, on February 25, 1899, executed to appellees a warranty deed for the same, his wife joining therein; that after its due execution the deed was left with said Johnson by appellees for safe-keeping; that the same was never recorded; that afterwards Johnson died testate, and that the appellants are his executors, devisees and legatees under his will; that upon the death of Johnson appellants came into possession of the deed, and that they refused, upon demand, to deliver the same to appellees. An answer of general denial was filed to the complaint, the cause submitted to the court for trial, and the following finding made by the court: "The court, being well and sufficiently advised in the premises, finds that the plaintiffs are the owners in fee simple as tenants by the entireties of the real estate

described in the complaint; that the. defendants claim an interest therein adverse to plaintiffs; that their claims are without right and unfounded; and that the plaintiffs are entitled to have their title thereto quieted." This finding is followed by a decree quieting plaintiffs' title to the premises, and this decree is followed by an order directing defendants to deliver to plaintiffs, within five days, a certain deed described as having been executed by the deceased Johnson and wife to plaintiffs, and, on their failure so to do, appointing a commissioner to make a deed. Appellants' motion for a new trial for cause was overruled, and within one year from the entering of the decree appellants filed their bond for costs, conditioned according to law, and moved for a new trial as of right, which was overruled, and exceptions properly reserved. The action of the court below in overruling these motions is assigned as error in this court.

The cause relied upon for a new trial is the refusal of the court to admit in evidence an account book kept by the decedent, Johnson. It appears from the evidence that Johnson had formerly conveyed to the appellees a lot in Johnson's addition to the city of Elkhart, not the one described in the complaint; that Zimmerman and wife, through Johnson, obtained a loan of $1,500 by mortgage upon this property, and at the same time a written agreement was entered into between the appellees, the parties who made the loan to them, and Johnson, by the terms of which the $1,500 loaned was to be placed in Johnson's hands, and he was to pay the same out for the construction of a dwelling-house upon said lot, and it was claimed by the appellees that the real estate in controversy was paid for out of this loan. It was contended by the appellants that this was not so, but that the entire amount of said loan of $1,500 was applied by Johnson in payment for the improvement upon the lot, as contemplated by the written agreement. It was for the purpose of proving these payments that the book was offered in evidence.

We think this. question is not properly presented by the record before us, and unless properly presented by the record this court has no right to consider it. *Martin* v.

1. *Martin* (1881), 74 Ind. 207; *Miller* v. *Evansville, etc., R. Co.* (1896), 143 Ind. 570; *Drake* v. *State* (1896), 145 Ind. 210; *Wilson* v. *State* (1901), 156 Ind. 631; *Kraus* v. *Lehman* (1908), 170 Ind. 408; *State, ex rel.,* v. *John* (1908), 170 Ind. 233.

The account and the check stubs proposed to be introduced in evidence are written instruments, as much so as a note, letter, deed, record or deposition. It is the

2. statement in writing contained in· the book and on the check stubs that is offered, and such book and stubs nowhere appear in the record. Before any question can be presented to this court on the rulings made by a court below in excluding written · instruments offered in evidence, the written instrument offered must be brought into the record. *Roseboom* v. *Jefferson School Tp.* (1890), 122 Ind. 377; *Rucker* v. *Steelman* (1884), 97 Ind. 222; *Musser* v. *State* (1901), 157 Ind. 423; *Nudd* v. *Holloway* (1873), 43 Ind. 366; *Lautman* v. *Pepin* (1901), 26 Ind. App. 427; *Bensch* v. *Farnsworth* (1894), 9 Ind. App. 547.

The preliminary proof upon which the rejected evidence was offered was made by one of the executors who had charge of the books and papers. His testimony was

3. that the. account with appellee Zimmerman, on page 164, was in Johnson's handwriting, and we might infer from this statement that the account proposed to be introduced was a statement in the book of transactions between Johnson and the appellees. But such, very evidently, was not the case, nor is it claimed on the part of appellants that the account registered transactions between Johnson and Zimmerman, but was an account of sums paid out by Johnson to disinterested third persons for work done and materials furnished in the construction of the building upon the lot referred to in the contract between the parties. These dis-

interested third persons, to whom the payments were made, were entirely competent to testify to every fact exhibited by the record made by Johnson in his book. This court cannot tell from the record what the accounts and checks tendered in evidence would prove, or whether they would tend, in the remotest degree, to support the contention of the appellants.

4. There was clearly no finding in this case upon any question except that presented by the first paragraph of appellees' complaint.

This was a suit to quiet title to the real estate in question, and the court erred in overruling appellants' motion for a new trial as of right, and for this error the judgment of the court below is in all things reversed, with instructions to the court below to grant a new trial, with leave to the parties to reform issues, if desired.

## Concurring Opinion.

Roby, C. J.—Appellees' complaint is in two paragraphs. The first is in the usual form of a complaint to quiet title, and describes lot No. 122 and the east half of lot No. 121 in Johnson's riverside addition to the city of Elkhart. In the second paragraph it is averred that defendants' decedent was in his lifetime the owner of said lands, and that the plaintiffs purchased the same from him for a consideration, which was fully paid; that on February 25, 1899, decedent executed his warranty deed therefor to plaintiffs, his wife joining therein, which deed was duly delivered to them, and that they left the same with said decedent for safe-keeping until such time as they should call for the same to have it recorded, and that afterwards he departed life; that they have demanded said deed from the defendants—executors, devisee and legatee of said decedent—who have possession thereof, and they refused to deliver it to plaintiffs, who aver that they are entitled to the possession thereof. The issue was

formed by a general denial. The cause was tried without a jury, and a decree entered against the defendants.

The second paragraph contains the requisites necessary to an action in replevin. §1330 Burns 1908, §1266 R. S. 1881; *Wilson* v. *Rybolt* (1861), 17 Ind. 391; *Bush* v. *Gromes* (1890), 125 Ind. 14.

The findings made by the court are "that the plaintiffs are the owners in fee simple, as tenants by the entireties, of the real estate described in the complaint; that the defendants claim an interest therein; that their claims are without right and unfounded, and that the plaintiffs are entitled to have their title quieted." The decree follows the findings, and contains in addition thereto an order to deliver the deed described in the second paragraph, and, in default of such delivery, names a commissioner to execute a deed for such premises. It is claimed that the decree amounts to no more than one quieting title, and that a motion for a new trial as of right, made by appellants, should have been sustained, which question, for reasons hereafter stated, is not decided.

Appellees have filed a motion to dismiss the appeal, basing the same upon the grounds that the provisions of the act of September 19, 1881 (§2977 Burns 1908, §2454 R. S. 1881), have not been followed, and that a proper index was not attached to the transcript. The appeal was however properly taken under the general statute (*Baker* v. *Edwards* [1901], 156 Ind. 53; *Mason* v. *Roll* [1892], 130 Ind. 260), and the transcript is sufficiently indexed.

The case as it comes here is, upon the evidence, decidedly unsatisfactory. It shows a delivery of the deed by Ruel M. Johnson, its retention by a third person for more than a year, when it was taken by Alpheus Zimmerman, and returned by him to said Johnson, and found among the latter's effects enclosed in an envelope marked, "Not delivered." Appellees averred and undertook to show payment of the purchase price of said lots. To this end a

witness was introduced who testified, in substance, that the consideration for the lots described was the conveyance of another lot, which had·been previously sold by said Johnson to the appellees, and paid for by them out of a loan which he had procured for them, and which was secured by a mortgage on said lot.

In this state of the evidence appellants· offered to introduce an account in decedent's own handwriting, in a book which he kept in connection with the business of his office, by which the amount of said loan and the manner of its distribution are shown. Such entries contained memoranda of checks by which such payments were made, and, with the checks thus referred to, were excluded by the court upon appellees' objection, to which ruling appellants reserved an exception. These entries and checks were admissible both as having been made by the agent of appellees, authorized by them to distribute the borrowed fund (*Reno* v. *Crane* [1829], 2 Blackf. 217; 1 Greenleaf, Evidence [16th ed.], §184c), and under the account-book rule, as part of the *res gestæ* of the transaction upon which payment for the lots in controversy is made to depend. *Doe* v. *Turford* (1832), 3 Barn. & Ad. 890; *Place* v. *Baugher* (1902), 159· Ind. 232; *Fleming* v. *Yost* (1894), 137 Ind. 95.

The shop-book rule of evidence, which permits account-book entries and other regular entries made in the course of business to be introduced in evidence, has been a most unsettled one in this State. The transition from the common-law rules, the conflicting theoretical classifications stated in the many text-books, and the conflicting application of these rules in the various states, are doubtless the most responsible causes of this condition. Sixteen cases decided by the Indiana Supreme and Appellate Courts, which, investigation discloses, are all the cases in which the rule under consideration is discussed or referred to, have been examined, and from them the conclusion before stated was reached.

The rules as to the admissibility of entries by third per-

sons, entries by parties, and entries by deceased third persons and parties have apparently been developed separately, but under business conditions of the present day there is no reason for different rules regarding entries by third persons and by parties. See 2 Wigmore, Evidence, §1517 *et seq.* The court in *DeCamp* v. *Vandagraft* (1836), 4 Blackf. 272, held that plaintiff's books of account, in which he had charged the items for which he sued, were not admissible to support his demands, for that ''would be permitting him to make evidence for himself.'' This case was decided on the authority of the English common law, as it was at the time of its adoption in America, which permitted only entries made by a clerk to be admitted. The few American cases extending the doctrine and admitting entries made by a party were ignored, because, in the language of the court, ''the decisions in those cases, we presume, are founded on the local laws of those states.'' This case is doubtless the first cause of confusion in our reports, which has resulted less from what has been decided than from what has been said as dicta. The classification of Indiana by Wigmore that excellent textwriter—2 Wigmore, Evidence, §1536—as one of the few jurisdictions in which this branch of the exception (the admissibility of the account books of a party) has not been recognized, is erroneous, as the following cases show: *Place* v. *Baugher* (1902), 159 Ind. 232; *Wilbur* v. *Scherer* (1895), 13 Ind. App. 428; *Fleming* v. *Yost* (1894), 137 Ind. 95; *Culver* v. *Marks* (1890), 122 Ind. 554, 7 L. R. A. 489, 17 Am. St. 377.

Two cases involving the question were decided prior to *DeCamp* v. *Vandagraft, supra.* In *Reno* v. *Crane* (1829), 2 Blackf. 217, which was an action by a partner to replevy a boat, an entry by him in the partnership books, charging himself with the boat sued for, was admitted. In *Harrison* v. *Lagow* (1824), 1 Blackf. *307, plaintiff offered books in evidence to sustain his demand for goods sold and delivered. They were held inadmissible because the plaintiff had not

proved them to be his, but this reasonably implies that, if properly proved, they would have been held admissible.

*Place* v. *Baugher, supra,* serves to some extent to clear up the law relating to account books. It was an action for the value of lumber delivered to a purchaser at his sawmill. The defendant was permitted to read in evidence from his account books in which he had entered the number of feet of lumber received. A few of the decisions were discussed and distinguished, and the proposition of law laid down that account books which are a part of the *res gestæ* should be held admissible.

*Wilbur* v. *Scherer, supra,* was a similar action, by the operator of a sawmill, "on an ordinary book account," in which the party's account book was admitted. *Fleming* v. *Yost, supra,* held, in an action to set aside a conveyance of real estate as fraudulent, that the account book of a defendant was admissible as evidence to show payment for the real estate.

The cases besides *DeCamp* v. *Vandagraft, supra,* in which books of account have been refused in evidence are: *Cleveland, etc., R. Co.* v. *Coffman* (1903), 30 Ind. App. 462; *Rouyer* v. *Miller* (1896), 16 Ind. App. 519; *First Nat. Bank, etc.,* v. *Williams* (1892), 4 Ind. App. 501; *Pittsburgh, etc., R. Co.* v. *Noel* (1881), 77 Ind. 110. In the case last cited, the books were found by the court not to have been parts of the *res gestæ,* and an account book, to be admissible, must be part of the *res gestæ. Place* v. *Baugher, supra; Fleming* v. *Yost, supra.*

*Cleveland, etc., R. Co.* v. *Coffman, supra,* was decided on the authority of *Pittsburgh, etc., R. Co.* v. *Noel, supra.* The decision in *First Nat. Bank, etc.,* v. *Williams, supra,* which was a suit against a bank for money deposited with it, in which the ledgers of the bank were refused in evidence, was also based expressly upon *Pittsburgh, etc., R. Co.* v. *Noel, supra,* which was the only case cited. The conclusion—the correctness of which is doubted—must have been that the

books were not a part of the *res gestæ*, or that "necessity" did not demand their admittance, since other sufficient evidence was offered. As to this point see *infra*. Books of a bank have several times been held admissible to show the state of a depositor's account (*Glover* v. *Hunter* [1867], 28 Ind. 185; *Johnson* v. *Culver* [1888], 116 Ind. 278; *Culver* v. *Marks, supra*), but in each of these cases the entrant was a third person not a party. *Rouyer* v. *Miller, supra,* is valueless as authority upon the point under consideration. The page from the account book was rejected because no proof was made as to when or where the entries were made, or that they were in defendant's handwriting, and it was doubted whether the page in question was anything more than memoranda and therefore not admissible. These cases, while holding that under particular circumstances parties' books of account are inadmissible, cannot be said to affirm *DeCamp* v. *Vandagraft, supra,* hence that case stands alone, entirely unsupported by modern authority.

That account books, the entries in which were made by third persons, are admissible is an unquestioned proposition. *Glover* v. *Hunter, supra; Culver* v. *Marks, supra; Cleland* v. *Applegate* (1894), 8 Ind. App. 499. While our cases permit the introduction of account books, the entries in which were made by a party as well as those in which the entries were made by third persons, they are not clear as to just what conditions are necessary for such introduction. The principal reason for the rule and the cause of its development is said to be "necessity." Formerly a plaintiff was not a competent witness to prove his claim, and the mercantile conditions of the early days left a party generally without other evidence than his own statement in the books. In *Dodge* v. *Morrow* (1896), 14 Ind. App. 534, it is stated, on petition for rehearing, that entries are only to be admitted where no other or better means of making the proof is obtainable. That "necessity" was the reason for the rule is also stated in *Culver* v. *Marks, supra,* "for," quoting from a note to

*Price* v. *Earl of Torrington* (1703), in 1 Smith's Lead. Cas. (9th ed.), 566, 570, "in view of the number and frequency of transactions of which entries are daily required to be made, the difficulty and inconvenience of making formal common-law proof of each item would be very great. To insist upon it, therefore, would either render a credit system impossible or leave the creditor remediless." The statement in Smith's Leading Cases is made regarding the admission of party's account books, but the rule is applicable to the other class, which was in evidence in *Culver* v. *Marks, supra.* Necessity is undoubtedly at the foundation of that portion of the rule which admits account-book entries of a party who is incompetent. Such entries are stated to be admissible in *Culver* v. *Marks, supra,* (see quotation *infra* 178). In *Slade* v. *Leonard* (1881), 75 Ind. 171, which was a suit by an administratrix for money loaned by her intestate, defendant offered both his own and the intestate's account books to prove the dealings between them. Defendant was not permitted by the lower court to be a witness under the statute of 1867 (Acts 1867, p. 225). On appeal the question as to the ruling on the statute is not decided, and the inconsistent statement is made: "The books of the defendant were not admissible to prove any item of set-off or payment, but it was competent for him to introduce both books, with accompanying evidence, that all the items contained therein were included in the settlement." The judgment was reversed upon another error, and, whatever its holdings on questions involved may be said to be, it is not authority.

Under general business circumstances the probability of accuracy and trustworthiness of the entries is great, hence another reason justifying the admission of account books has been stated to be, the circumstantial guarantee of trustworthiness. While no case in Indiana has in terms invoked the latter doctrine, it is of controlling force. Necessity for the admission of entries does not seem to mean that they are to be admitted only in the absence of all other proof. Sev-

eral of the cases in Indiana have admitted entries where there was other evidence. *Place* v. *Baugher, supra; Fleming* v. *Yost, supra.* If necessity were the only circumstance under which the entries could be admitted, they would often be introduced by allowing witnesses on the stand to ''refresh their memories'' by them to such an extent that they would virtually be in evidence. The fiction of the law, that there is a distinction between admitting a book and permitting a witness to ''refresh his memory'' from a book, where, in fact, he remembers nothing of the transaction, is an antiquated one, and it would seem that our courts no longer draw the distinction. *Place* v. *Baugher, supra; Wilbur* v. *Scherer, supra; Johnson* v. *Culver, supra.* But in *Pittsburgh, etc., R. Co.* v. *Noel, supra,* where the entries ''were not *res gestæ*,'' they were refused in evidence ''however useful they may or might have been as memoranda, to be used in refreshing the memory of the witnesses who made them.'' Our rule then permits entries made in account books to be admitted in evidence if they are a part of the *res gestæ* of the matter involved. In this connection it might be well to note the definition quoted in *Fleming* v. *Yost, supra,* from *Carter* v. *Buchannon* (1847), 3 Ga. 513: '' 'The circumstances, facts and declarations which grow out of the main fact, are contemporaneous with and serve to illustrate its character, are part of the *res gestæ*.' ''

Many, if not most, of the states have, by statute, declared what conditions must exist to make this evidence competent, thus disposing of a question which for over a century has been unsettled. The statutes represent the crystallization of the rules created by the courts. They usually require a suppletory oath to support the entries offered. In some jurisdictions proof is required that the books were kept for the purpose, that they contain original entries for goods delivered or for work and labor performed, etc., that the entries are just, to the best of deponent's knowledge and belief, that they are in his handwriting, and were made at the

time the goods were delivered or services performed. In case of books kept by a clerk, proof must be made by such clerk unless he is dead or beyond the reach of the court. If the court is satisfied as to the genuineness of the entries, they are received as presumptive —*prima facie*—evidence. This is in brief the Wisconsin law. 2 Wisconsin Statutes (1898), §§4186, 4187, 4189. The New Mexico statute, Comp. Laws, N. M. (1897), §3031, typifies a simple form of statute: "Hereafter in the trial of civil causes in the courts of this territory, the books of account of any merchant, shopkeeper, physician, blacksmith or other person doing a regular business and keeping daily entries thereof, may be admitted in evidence as proof of such accounts upon the following conditions: (1) That he kept no clerk, or else the clerk is dead or inaccessible. (2) Upon proof, the party's oath being sufficient, that the book tendered is the book of original entries. (3) Upon proof, by his customers, that he usually kept correct books. (4) Upon inspection by the court to see if the books are free from any suspicion of fraud."

The Illinois statute provides that a party shall prove his account book to be one of original entry, made by himself, some deceased person, or disinterested person, now a nonresident, and that the entries were made in the regular course of business. Hurd's R. S. of 1905 (Ill.), Chap. 51, §3. Several of the statutes limit the amount which may be established by account books.

The most, if not all, of the requirements set out in the statutes just cited have, in various decisions in states which have no statutory enactments on this subject, been stated as necessary. Few cases in Indiana decide what foundation must be laid for the introduction of account-book entries, but the following rules are to be gathered from the decisions: Plaintiff must prove them "to be his." *Harrison* v. *Lagow* (1824), 1 Blackf. *307. Entries must be original, and not

on the representations made by another party. *Dodge* v. *Morrow, supra.* Proof must be offered showing when and where entries were made, and that they were made in the handwriting of some authorized person. *Rouyer* v. *Miller, supra.*

The books in the present case are admissible, not only as being the account books of a party, but as being the account books of a deceased person. As was pointed out before, there, at present, is but little if any difference between the rules; but there has never in Indiana been any question as to the latter. It is said in *Culver* v. *Marks, supra,* quoting from 1 Wharton, Evidence (3d ed.), §238: " 'Book entries, of an officer, agent, or business man, when in the course of his duties, become evidence after his decease, or after he has passed out of the range of process, or become incompetent to testify of the truth of such entries.' " An English case decided before *DeCamp* v. *Vandagraft, supra,* holds that the rule covers all entries made by a person, since deceased, in the ordinary course of business, whether a person wholly unconnected with the parties or the clerk of the party, or the party himself. *Doe* v. *Turford, supra.* The practice at this time, when parties are competent witnesses, cannot be less liberal than it was when the strict common-law rules prevailed.

To recapitulate: The books in this case are admissible (1) as having been made by the agent of appellees, authorized by them to distribute the fund; (2) under the general account-book rule, which admits regular entries made in the course of business; (3) under that portion of the account-book rule which admits the books of a deceased person.

The record exhibits the ruling of the trial judge. The offer made by appellants is explicit and clear. Appellees have waived any right to object to the form of such offer, there is no defect in substance, and the evidence offered should have been admitted.

The fact that the deed for the lots described in the com-

Pittsburgh, etc., R. Co. *v.* Warrum—42 Ind. App. 179.

plaint was made to a husband and wife does not render proof of the financial condition and pecuniary resources of either one of them incompetent. A decree quieting title cuts off any lien which the vendor might otherwise have for his purchase money. The learned trial judge has opportunities for weighing evidence which this court does not have, but proof of payment rests upon such extended inference that the exclusion of any evidence bearing upon the question could not have been otherwise than harmful.