DAVIS CONSTRUCTION COMPANY ET AL. *v.* GRANITE SAND AND GRAVEL COMPANY.

[No. 12,839. Filed October 11, 1928. Rehearing denied February 20, 1929. Transfer denied December 4, 1929.]

*Kane, Blain & Hollowell* and *Slaymaker, Merrell, Ward & Locke,* for appellants.

*Walker & Hollett* and *Owen S. Boling,* for appellee.

McMahan, J.—Appellant Davis Construction Company, in 1924, was engaged in the construction of a state highway under a contract with the State Highway Commission, and in that connection gave a bond, with appellant Southern Surety Company as surety, conditioned, among other things, to pay for all materials furnished in the carrying out of the contract. After the execution of this contract and bond, the construction company, hereafter referred to as "appellant," entered into a contract with the Granite Sand and Gravel Company, appellee herein, whereby appellee sold and delivered to appellant sand and gravel, at the price of $1.03 per cubic yard f. o. b. cars at Morristown. All material shipped in any one month was, under the agreement, to be paid for by the 10th of the following month.

This is an action by appellee against the construction company and the surety company to recover a balance alleged to be owing for sand and gravel used in the work, and for freight paid by appellee. A trial by jury resulted in a verdict and judgment in favor of appellee for $7,711. From that judgment, both defendants have appealed, and have assigned as error the action of the court in overruling their separate motions for a new trial.

Appellants contend that: (a) The court erred in admitting certain evidence; (b) in giving certain instructions; (c) that the verdict is not sustained by sufficient evidence; and (d) that the amount of the recovery is too large.

Appellee's sand and gravel pit was located near a certain interurban railroad. The material was loaded into freight cars, owned by the railroad, by the use of a steam shovel. Some of the cars held 12 yards while others held 16 yards. Appellee claims it shipped 19,728 yards of sand and gravel and that it paid freight thereon at 65 cents per yard. Appellants claim many of the cars shipped were not fully loaded, and that, as a consequence thereof, appellee had not delivered as much sand and gravel as claimed.

The first sand and gravel which appellee furnished was on March 20, 1924, when four cars were shipped. When these cars were loaded and ready for shipment, appellee's superintendent at the gravel pit made out an original bill of lading and two carbon copies thereof, on blanks furnished by the railroad company. One of the carbon copies at that time, and just before the departure of the loaded cars, was delivered to the railroad, and the other copy was kept by the superintendent. The original copy was mailed to the main office of appellee. Appellee, almost daily thereafter, up to and including October 6, 1924, made shipments of sand and gravel to appellant, and, in each instance, the superintendent

made out an original bill of lading and two carbon copies and disposed of them the same as he did with those made out on March 20. During that time, appellee made 338 shipments to appellant, so that a total of 338 bills of lading had been made and delivered to the railroad company. Each bill of lading was dated, and indicated the number of cars shipped, describing each car by number, the number of yards in each car, and was signed by the superintendent. At the close of each day, the superintendent at the gravel pit, using the bills of lading made out during the day as a guide, made a daily record of the amount of sand and gravel shipped that day, in a book kept for that purpose. At the end of each month, appellee sent an itemized statement to the construction company showing the daily shipments, with the descriptive number of each car shipped on each day and the number of yards contained in each car, and indicated the total amount due appellee, calculated at $1.03 per yard, plus 65 cents for freight paid. The invoices so mailed to appellant indicated that a total of 19,728 yards of sand and gravel had been shipped to appellant, and that appellee had charged appellant $1.03 for each yard, and that it had charged appellant for freight paid thereon at the rate of 65 cents per yard. The invoice of September 30, showed a balance of $17,926.42 owing appellee, after giving appellant a credit for $8,000 paid September 5. The invoice for October showed that, on the first six days of that month, 796 yards had been shipped, for which appellant was charged $1,337.28, $517.40 being for freight paid. Appellee was given credit for $6,120.96 on this last invoice, leaving a balance of $13,142.84 due appellee according to this invoice. The total with which appellant was charged, as shown by these invoices, was $33,142.84, $12,823.20 being for freight paid, and $20,319.64 being the amount due for sand and gravel at the contract price. The invoices

gave appellant credit for the several amounts it had paid on the invoices. On November 10, 1924, appellant paid $6,000 on the account, leaving a balance of $7,142.84 due appellee if the number of yards had been shipped as indicated on the several invoices.

Appellee's superintendent testified that he superintended the loading of the cars and that the cars were loaded to their capacity, that each car contained the number of yards as shown on the bills of lading, and that the number of cars was shipped as shown on the several bills of lading. Appellant never made any objection to the invoices received by it or to the amount with which it was charged. About a year after the last material had been shipped, and at a time when appellee was trying to collect the balance which it claimed was owing it, one of the carbon copies of each of the 338 bills of lading was given to the construction company. An inference might be drawn that a question had arisen then as to the number of yards of material furnished or as to the amount of the payments made by the construction company.

Ray H. Bower, who was the secretary of the construction company and its manager in charge of the work in question, while testifying as a witness for appellee, was shown what he said was a copy of the several invoices received by appellant from appellee, and, after having compared it with the original invoices which he then had in his possession, he testified that the copy which was shown him was a correct copy of the invoices which had been received by appellant. The copy of the invoices which had been shown the witness was marked "Exhibit C," and, over the objection of appellants, was introduced in evidence. The 338 carbon copies of the original bills of lading were fastened together, and, after being marked "Exhibit F," were, over the objection of appellants, introduced in evidence.

Appellants contend the court committed reversible error in admitting each of these exhibits in evidence. Referring to "Exhibit C," appellants say it ■■ "was merely a record taken from the books of plaintiff, was based upon, and depended for accuracy upon 'Exhibit F'; was made by the plaintiff, and was a self-serving statement." The court did not err in allowing "Exhibit C" to be read in evidence. It is a well-settled rule that an account rendered, and not objected to within a reasonable time, is to be regarded as admitted by the party charged to be *prima facie* correct. *Wiggins* v. *Burkham* (1869), 77 U. S. (10 Wall.) 129, 19 L. Ed. 884. Appellee's original book of entry, showing the amount of sand and gravel shipped, without question would have been proper evidence to prove the amount of material sold and delivered to appellant, and the original invoices which had been sent to and received by appellant each month would have been competent evidence tending to show an admission by appellant that the material as therein shown had been received by them, and that the account as shown was correct. If appellants had objected on the ground that the offered exhibit was not the best evidence and had insisted that either the original book of entry in possession of appellee or the original invoices in the possession of the construction company, and, with which the witness had compared the exhibit, should have been introduced instead of "Exhibit C," there might be some foundation for a claim that the court erred in admitting "Exhibit C" in evidence. But, even then, the admission of such evidence, if erroneous, would certainly not amount to reversible error, in view of the testimony of appellant's secretary that this exhibit was a true copy of the invoices received by appellant. We fail to see how appellants were harmed by the action of the court, when it is admitted that "Exhibit C" is a correct copy of the

invoices. The number of cars shipped, the date of each shipment and the number of yards in each car, as indicated in "Exhibit F," and as shown by "Exhibit C," and as shown by the invoices which the construction company received from appellee, are identical.

Appellants also contend the court erred in allowing "Exhibit F" to be read in evidence. It is contended that the several bills of lading going to make up "Exhibit F" are self-serving declarations, and for that reason not admissible in evidence. In passing upon this question, it must be remembered that appellee's superintendent testified that he superintended the loading of the cars; that the cars were all loaded to their full capacity; that he made out the several bills of lading and disposed of them as heretofore indicated; and that the number of yards was shipped as indicated on the bills of lading. In *Millsaps* v. *Strange Co.* (1927), 37 Ga. App. 716, 141 S. E. 513, sale tickets, made by salesmen and delivered at time of sales as memoranda thereof in the regular course of business, were held to be a part of the *res gestae*.

A consignor, having delivered a car of lumber to a carrier for transportation, mailed the bill of lading and an invoice of the contents of the car to the consignee. In an action by the consignee against the carrier for loss of the lumber, where the evidence showed that the invoice was made in the usual course of business and in accord with the custom of the consignor, the invoice was held to be of the *res gestae* and properly admitted in evidence. *Milne* v. *Chicago, etc., R. Co.* (1911), 155 Mo. App. 465, 135 S. W. 85.

In *Halsey* v. *Sinsebaugh* (1857), 15 N. Y. 485, the court, quoting from Cowen and Hill's notes to Phillips' Evidence, approved the statement that, "An *original* memorandum, made by the witness *presently after* the facts noted in it transpired, and proved by the same wit-

ness at the trial, may be read by him, and is evidence to the jury of the facts contained in the memorandum, although the witness may have totally forgotten such facts at the time of the trial." See *Imhoff* v. *Richards* (1896), 48 Nebr. 590, 67 N. W. 483; *Corkran & Meloney* v. *Rutter* (1908), 76 N. J. Law 375, 69 Atl. 954; *Autocar Sales, etc., Co.* v. *Scheuter* (1922), 97 N. J. Law 560, 117 Atl. 596.

It was held in *Republic Fire Ins. Co.* v. *Weide* (1871), 81 U. S. (14 Wall.) 375, 20 L. Ed. 894, that papers, not evidence *per se,* but proved to have been true statements of facts at the time they were made, were admissible in connection with the testimony of the witness who made them.

In *Diament* v. *Colloty* (1901), 66 N. J. Law 295, 49 Atl. 445, Diament was engaged in furnishing and hanging wall paper. As work progressed, the person in charge made report of the material used and cost of labor, on blank slips furnished by his employer. These slips were admitted in evidence over the objection of the defendant. The daybook and ledger were subsequently admitted in evidence. The court, after holding the slips were no more than memoranda which might be used by the witness to refresh his memory, but not competent when standing alone to prove the facts therein stated, held it not error to admit them in evidence along with the daybook and ledger.

In *Place* v. *Baugher* (1902), 159 Ind. 232, 64 N. E. 852, the appellee had purchased sawlogs from appellant, and, as they were delivered at the mill, appellee measured each log; the number of feet in each log, according to his measurement, was, at the time, inscribed on a plank, and, at the close of the day, transferred and entered in a daybook and afterwards transferred to his general ledger. He testified to the making of the measurements, the entering of the measurements in the daybook and

that the entries as to the number of feet and dates were correct. He was allowed to refer to the book, and, from an examination thereof, to read therefrom the number of feet of lumber as recorded therein. In speaking of these entries, the court said: "They were the *res gestae* —a part of the transaction of the delivery and measurement of the logs—and the admission of the evidence under the circumstances was not that which was merely exhibited by the books wholly unexplained."

So, in the instant case, the bills of lading were of the *res gestae*—a part of the act of the delivery, and measurement of the sand and gravel—and the admission of them in evidence under the circumstances was not that which was merely exhibited in the bills of lading wholly unexplained. For cases approving *Place* v. *Baugher, supra,* see *Johnson* v. *Zimmerman* (1908), 42 Ind. App. 165, 84 N. E. 541; *State, ex rel.,* v. *Central, etc., Bridge Co.* (1912), 49 Ind. App. 544, 97 N. E. 803; *Marks, Admr.,* v. *Box* (1913), 54 Ind. App. 487, 103 N. E. 27; *J. P. Smith Shoe Co.* v. *Curme-Feltman Shoe Co.* (1918), 71 Ind. App. 401, 441, 118 N. E. 360, 370; *Catherwood* v. *Ford* (1927), 86 Ind. App. 228, 145 N. E. 567; *Sheridan Coal Co.* v. *C. W. Hull Co.* (1910), 87 Nebr. 117, 127 N. W. 218, 138 Am. St. 435; *Rogers* v. *Krumrei* (1906), 143 Mich. 15, 106 N. W. 279. See, also, note 125 Am. St. 847, 138 Am. St. 441, 454, 465. We hold the court did not err in admitting "Exhibit F" in evidence.

In *McLendon* v. *Frost* (1875), 57 Ga. 448, it was held that where there was positive evidence of a fact, the admission of cumulative evidence, even if it was not strictly legal, was not generally cause for a new trial. The admission of a single item of incompetent evidence is not reversible error if immediately followed by competent evidence on the same point corroborating the other. "It is like admitting parol evi-

dence as to the contents of a written instrument and then immediately after introducing the instrument itself, and showing that it conforms with the testimony given." *Jones* v. *Wattles* (1902), 66 Nebr. 533, 92 N. E. 765.

The court first instructed the jury as to what facts were put in issue by the complaint and answers, and that the burden of proving the material allegations of the complaint was on the plaintiff. In instruction No. 4, the jury was told that certain facts were shown by the evidence without dispute. Appellants contend the court, in giving this instruction, invaded the province of the jury. Appellants make no claim that any fact so assumed by the court was not proved by undisputed evidence. No attempt has been made to show that there was any conflict in the evidence bearing upon the facts which the court, in the instruction, said had been shown by the undisputed evidence. Indeed, almost every fact assumed was covered by a stipulation and by the contract between appellant and appellee, which was introduced in evidence. The only assumed fact not so stipulated, or so proved, was the fact that appellee had paid the freight on all the material shipped at the rate of 65 cents per cubic yard, and that fact was proved by uncontradicted evidence. The only question in the case on which there was any conflicting evidence was as to the number of yards of sand and gravel furnished by appellee, and this question was submitted to the jury under proper instructions. There was no error in giving this instruction.

Complaint is also made of instruction No. 5, wherein the court told the jury that the construction company did not deny that appellee had delivered sand and gravel to it pursuant to the contract, and that the construction company admitted it was liable under the contract for the sand and gravel actually delivered, but that it did deny that appellee had delivered

the quantity claimed. Appellants say the giving of this instruction was reversible error. There is no merit in this contention. While appellants had each filed an answer of general denial, the evidence, without any conflict, showed that appellee did deliver the sand and gravel pursuant to the contract, and that appellants were liable for all material so delivered. Appellants' sole and only defense was that appellee had not delivered the amount of material as claimed by appellee.

The amount of the recovery is well within the evidence. Appellant, by making payments on the account as rendered from time to time, indicated its assent to the correctness of the account.

There was no error in overruling the motion for a new trial.

Judgment affirmed.

Thompson, J., dissents.