DONALD CHURCHILL *vs.* JOHN C. HEBDEN *et al.*

DECEMBER 30, 1910.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Evidence. Books of Account. Credit Given, to Whom.*

In an action upon book account, plaintiff offered in evidence books of account kept in regular course of business, for the purpose of proving not only the performance of the services and the charge therefor, but also for the purpose of showing to whom plaintiff had extended credit. Defendant had admitted the performance of the work, and the amount of the charge. The evidence was excluded:—

*Held,* that, in view of the admission, the only purpose in offering the books was to show that the charge was made against defendant, and books of account

are inadmissible to show to whom credit was given when that fact is in issue.

(2)	*Evidence.   Res Inter Alios Acta.*

Upon the issue as to whether defendant had employed or agreed to pay plaintiff for his services, rendered to the brother of defendant; evidence as to other payments made by defendant to other parties in connection with the same transaction was properly excluded.

(3)	*Contracts.   Implied Promise to Pay for Services Performed for Third Party.*

In an action to recover for professional services rendered to brother of defendant, evidence considered, and held not to sustain any implied promise on the part of defendant to pay therefor.

ASSUMPSIT.   Heard on exceptions of plaintiff, and overruled.

DUBOIS, C. J.   This is an action of assumpsit brought by the plaintiff, a physician and surgeon, to recover the sum of five hundred dollars for "professional services in performing operation for appendicitis on William D. Hebden, June 25, 1908."   The defendants named in the writ are John C. Hebden, of Providence, and William D. Hebden, of Pawtucket, in this State.   The writ was dated December, 1908, and was made returnable to the Superior Court on the sixth day of January, 1909.   On the eighth day of January, 1909, the plaintiff filed his declaration in said case against John C. Hebden, aforesaid, and on the same day entered in said court a discontinuance of said action as against said William D. Hebden.   February 11, 1910, the death of the plaintiff was suggested, and an appearance was entered for the executrix of his will.   Upon jury trial, at the conclusion of the testimony, on motion of the defendant, the justice presiding directed a verdict for the defendant upon the ground that there was no evidence that the defendant had promised the plaintiff to pay him for the services for which he had brought suit; and further, that there was no evidence from which such a promise can be inferred. In other words, that the evidence failed to prove either an express or implied promise of the defendant to the plaintiff. The plaintiff thereupon took an exception to said decision and prosecuted the same, and other exceptions taken during the

trial, in the following bill of exceptions: "Now comes the plaintiff in the above entitled case and shows that said case was tried in the Superior Court on March 4, 1910, before Mr. Justice Lee and a jury, and that at the conclusion of the testimony, on motion of the defendant, and by direction of the court, a verdict was rendered for the defendant.

"That thereafterwards within seven days after said verdict the said plaintiff filed notice of intention to prosecute a bill of exceptions.

"That certain exceptions were taken during the trial and in the proceedings in said case as follows:

"1. To the ruling of said justice at the trial of said case in refusing to admit the books of the plaintiff in proof of the declaration upon book account and under the plea of the general issue, to which exception was duly taken as shown upon page 9 of the transcript of testimony.

"2. To the ruling of said justice in refusing to admit in evidence said book account after further foundation had been laid for its admission, to which exception was duly taken, as is shown upon page 51 of said transcript.

"3. To the ruling of said justice in refusing to admit evidence that the defendant paid for the services of other persons who performed services in connection with the same transaction as that in which the plaintiff was suing for his services, to which exception was duly taken, as shown on page 35 of said transcript.

"4. To the ruling of said justice at said trial in refusing to admit upon cross-examination of the defendant a question as to whether he engaged the hospital in which the operation upon his brother was performed, to which exception was duly taken, as is shown on page 62 of said transcript.

"5. To the ruling of said justice in refusing to admit in evidence a question in cross examination of the defendant as to whether he paid the hospital bill, to which exception was duly taken as shown on page 64 of said transcript.

"6. To the direction of the verdict for the defendant upon the defendant's motion therefor at the conclusion of the testi-

mony, to which exception was duly taken, as shown on page
93 of said transcript.

"And the plaintiff avers that all of said rulings and the di-
rection of said verdict were erroneous, and that said errors en-
title the plantiff to a new trial or to judgment.

"Wherefore the plaintiff within the time limited tenders
this bill of exceptions and prays that the same may be duly
allowed in accordance with law."

The case is now before this court for consideration of the
validity of the exceptions therein contained.

(1)     The first and second exceptions relate to rulings of the trial
judge refusing to admit the books of account of the plaintiff,
kept by him in the regular course of business, for the purpose
of proving not only the performance of the services and the
charge made therefor, but also for the purpose of showing
to whom the plaintiff had extended credit.   So far as proving
that the services were performed and the value placed thereon
by the plaintiff, the books were unnecessary, for the following
admission was made in behalf of the defendant in open court,
and in the presence of the jury during the trial of the case.   In
the course of the discussion relative to the admission or re-
jection of the plaintiff's books of account as evidence, the
following colloquy occurred between the court and counsel
for the defendant:   "THE COURT:   Do I understand that you
do not deny that this work was performed?   MR. BROWN:   No
denial that the work was performed, and no denial that the
charge was five hundred dollars.   The sole question is whether
this defendant was responsible for services performed on his
brother, whether he agreed to assume that liability."   In view
of the admission, the only purpose the plaintiff could have
had in offering the books of account in evidence thereafter was
to show thereby that he had made the charge against the de-
fendant.   The very point in issue was whether the defendant
had employed the plaintiff or had agreed to pay for his ser-
vices rendered to the brother of the defendant.   The jury
had to pass upon that issue, and the burden of proof was upon
the plaintiff to satisfy the jury, by a fair preponderance of

the evidence, of his employment by the defendant.   To show the entry upon the books would merely show the deduction reached by the plaintiff through his sources of information as to the circumstances surrounding the transaction.   Those circumstances were to be submitted to the jury, and they were entitled to consider them without knowledge of the inferences drawn therefrom by either party to the transaction.   The parties necessarily took an interested view of the situation, the jury should consider the same without prejudice.   The rule is well stated as follows:   "Books of account are inadmissible to show to whom credit was given when that fact is in issue.   Thus they are not evidence to charge a defendant with goods delivered to a third person or for services performed for a third person, on the adverse party's order."   17 Cvc. p. 379 bb. and cases cited.   There is no merit in the plaintiff's first or second exception, and the same are therefore overruled.

(2)     The plaintiff's third, fourth, and fifth exceptions were taken to rulings  excluding evidence as to other contracts or payments made by the defendant, as for example, who paid the nurse for her services rendered William D. Hebden, or whether the defendant engaged or paid for the hospital wherein the operation was performed by the plaintiff.   These were *res inter alios acta*, and were properly excluded.   The plaintiff therefore takes nothing by these exceptions. .

(3)     The last exception has reference to the court's direction of a verdict for the defendant at the conclusion of the testimony. The direction was in the following language:   "THE COURT: Gentlemen, this is an action brought by Harriet P. Churchill, executrix of the last will and testament of Donald Churchill, against John C. Hebden, to recover for the sum of five hundred dollars which the plaintiff alleges is due from the said John C. Hebden to the estate of Donald Churchill, deceased.   Now the plaintiff claims that on the 25th day of June, 1908, that John C. Hebden requested one Dr. Terry to employ a physician to operate upon his brother, William D. Hebden, who was then lying sick in the city of Pawtucket;  that the brother made arrangements to have William D. Hebden removed to the hos-

pital, the Jane Brown Memorial Hospital on Benefit Street, Providence; that he was removed to that hospital and was operated upon by Dr. Donald Churchill.

"Now in order that the plaintiff may recover in this action she must prove to you, by fair preponderance of the testimony, first, that John C. Hebden requested this work, and second, that he promised to pay it, or she must prove some circumstance by which a promise can be implied from the request. John C. Hebden is the brother of William D. Hebden. There is absolutely no testimony of an express promise to pay, so that if the plaintiff is entitled to recover in this case it must be by virtue of certain circumstances by which the law would imply a promise on his part to pay for those services. For instance, if a husband calls a physician to attend his wife, being under obligation to take care of his wife, the law would imply a promise to pay for those services, even though he made no promise. If a father calls a physician to attend his minor son, he being under obligation to take care of that minor son, the law would imply a promise to pay for those services. But where a mere stranger—and brothers are strangers in that respect—where a mere stranger calls upon a physician to attend a third person, whom the man calling the physician is under no obligation to take care of, then the law will not imply any promise to pay for the services rendered that third person, for they are of no benefit to the person making the request. In other words, the physician must look to the one for whose benefit those services are performed.

"Those are the facts in this case, and it is my duty to direct you to return a verdict for the defendant, and I so direct you."

A careful consideration of the transcript of testimony taken in the case fails to disclose any error on the part of the trial judge in the direction of the verdict. On the contrary, it reveals a state of facts fully justifying the charge given in the language above quoted; among other things it appears that the patient was a man twenty-nine or thirty years of age *sui juris* and keeping house in Pawtucket with his wife and three children, while the defendant was a resident of Providence;

that Dr. Terry testified that he telephoned to Dr. Churchill and made arrangements for the operation, but did not remember that anything was said about the fees or who should pay them; that William D. Hebden, the patient, testified in relation thereto as follows: "Dr. Terry entered my room with my brother, Mr. John C. Hebden, and he said I had appendicitis, and he said the only way to do was to go and be operated on.  I told him I didn't want to do that, I didn't like the idea of being operated on anyway; he told me it was the only way to do to get rid of the trouble.  I told him I didn't want to go.  He talked it over, he and my brother, and I asked him what the cost would be, and he says, 'Never mind about the cost.  It is a little matter that can be fixed up afterwards.'  I said, 'I would like to know, for I am the man that has got to pay this bill, and I would like to know before we decide whether or not I will go.'  He says, 'Don't let that bother you.  We can fix that satisfactorily,' and he sat there talking and says, 'Well, Mr. Hebden, I am going downstairs.  You think it over and decide to go into the hospital.'  I says, 'I would like to know definitely what it is going to cost.'  'Oh,' he says, 'two hundred dollars, possibly two hundred and fifty dollars, all said and told.'  I says, 'Dr. Terry, I don't want to go and be operated on anyway.  I don't like the idea and I don't think I am sick enough to be operated on.'  He sat talking a few minutes and then went downstairs, and he sat downstairs fully a half or three-quarters of an hour, and in the meantime Mr. John C. Hebden and my wife and mother came up and we were talking, and we decided I would go.  Dr. Terry, as I understand it, telephoned to Dr. Churchill, and Mr. John C. Hebden telephoned and made arrangements for the hospital."

In view of all the circumstances of the case we are of the opinion that the verdict was properly directed.

The plaintiff's exceptions are therefore overruled, and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*Everard Appleton, Mumford, Huddy and Emerson, George H. Huddy, Jr.,* for plaintiff.

*William J. Brown,* for defendant.