## MARKS, ADMINISTRATOR, *v.* BOX ET AL.

[No. 8,031. Filed November 7, 1913.]

1. WITNESSES.—*Examination.—Leading Questions.*—Where a question put to a witness is leading and suggestive, and calls for the witness's conclusion, the court's refusal to permit the witness to answer is proper. p. 493.

2. APPEAL.—*Questions Reviewable.—Exclusion of Evidence.—Failure to Reserve Exceptions.*—Where, on the offering in evidence of a check including a memorandum thereon, the court admitted the check but excluded the memorandum, to which an exception was reserved, and thereafter the memorandum alone was offered in evidence and excluded, but no exception was reserved, no question was presented by a specification of error in the motion for new trial predicated on the separate offer and exclusion of the memorandum. p. 493.

3. APPEAL. — *Questions Reviewable. — Exclusion of Evidence. — Specification in Motion for New Trial.*—No question is presented on appeal by a specification in the motion for new trial alleging error in the exclusion of both a check and a memorandum endorsed thereon, where it appears that the check was admitted and only the memorandum was excluded. p. 493.

4. EVIDENCE.—*Declarations.—Self-Serving Declarations.*—In an action against an estate involving the question of whether decedent and another, whose name appeared thereon, were comakers of a note as principals, or whether the latter was surety for the former, where a check, in the handwriting of a bank cashier, but signed by decedent, and bearing a pencil memorandum endorsed thereon in his handwriting, and which had been issued in payment of one of a series of notes signed by decedent and such cosigner, was offered in evidence on behalf of the estate as throwing light on the relation of the parties to the note in suit, and there was no evidence connecting decedent's cosigner with such check or showing that he had even seen it before, the court did not err in excluding the memorandum endorsed thereon, since to serve the purpose for which it was offered would necessitate the indulgence of inferences with reference to such cosigner's connection with the check, and as to the time of making the memorandum, and, even if such memorandum could be construed as supporting the contention made on behalf of the estate, it would be purely self-serving in its nature and therefore inadmissible. p. 494.

5. APPEAL.—*Questions Reviewable.—Admission of Evidence.*—In an action against an estate involving the question of whether

decedent's cosigner signed the note in suit as a principal or as surety, where the cashier of a bank, called as a witness for such cosigner, identified the bank's liability note ledger, and the court, on objection by the estate, said, "I hold the books competent evidence", to which the estate excepted, and counsel for such cosigner, without further objection by counsel for the estate, proceeded to elicit further testimony concerning the correctness and authenticity of the book, and had the witness to look at decedent's account therein and state what notes or other indebtedness decedent was owing to the bank at a certain date, the court had a right to presume that counsel for the estate believed from such further preliminary examination that the evidence sought was relevant and admissible, so that no question is presented on appeal by specifications in the motion for new trial challenging the admission of such ledger and the testimony of such witnesses. p. 496.

6. APPEAL.—*Review.—Harmless Error.—Admission of Evidence.—* In an action against an estate involving the question of whether decedent and another had signed a note as principals, or whether the latter signed as surety, the admission in evidence of the bank's discount register which indicated that decedent's cosigner was an endorser, was harmless when considered with the further examination of the cashier, who made the entries in such register, to the effect that it was the custom of the bank in registering notes that the person whose name appeared first on the note was entered as maker and the person whose name appeared second was entered as endorser. p. 498.

7. APPEAL.—*Review.—Harmless Error.—Admission of Evidence.—* In an action against an estate involving the question of whether decedent and his cosigner had each signed a note as principals, or whether the latter signed as surety, where the estate had offered in evidence, as bearing on the question, a check issued in payment of one of a series of notes executed by decedent and such cosigner, which was signed by decedent and bore a memorandum endorsed in the handwriting of decedent, and the court admitted the check, but excluded the memorandum, the estate was not harmed, but rather beneficially affected, by the admission in evidence, on behalf of such cosigner, of the books of the bank showing that the note in question stood as an obligation against decedent, where in the same connection the bank cashier, who made the entries, testified that the entry was so made because decedent's name appeared first on the note. p. 499.

8. EVIDENCE.—*Private Writings.—Books of Account.—*Entries in duly accredited account books, regularly made in due course of business, as a part of the *res gestae* of the transaction under investigation, are admissible in evidence, regardless of whether

they were made by the party offering same, or by his opponent, or by the representative of either, or by a third person; and such entries are admissible under some circumstances regardless of whether the entrant is dead, or absent from the jurisdiction, or is present at the trial and testifies as a witness, the proper preparatory and suppletory evidence having been heard. p. 500.

9. EVIDENCE.—*Private Writings.—Books of Account.*—Entries in the books of third persons are admissible in evidence where they are against the interest of the person making them, or where they were made contemporaneously with the principal fact done, and are a part of the *res gestae* of such fact or a link in the chain of events that constitutes such fact. p. 501.

10. EVIDENCE.—*Private Writings.—Books of Account.*—Entries in the books of third persons, to be admissible as a part of the *res gestae* must not only belong ordinarily and naturally to the principal fact under investigation, but there must have been a duty to do the very thing recorded, and a duty to record it, and the entries must have been made by one having knowledge of the facts entered, or who has received the information from some person engaged in the business, whose duty it was to transact the particular business and make report thereof for entry. p. 501.

11. EVIDENCE.—*Private Writings.—Books of Account.—Collateral Matters.*—Entries in the books of third persons are not admissible to prove any collateral matter. p. 502.

12. EVIDENCE.—*Private Writings.—Books of Account.*—In an action against an estate involving only the question of whether decedent's cosigner was a coprincipal with decedent on a note, or was merely surety for decedent, the relation between decedent and such cosigner respecting same was collateral to the relation that existed between them and the bank to whom the note was executed, and although the rights of the bank as against decedent and such cosigner, and their rights as between themselves, might have been determined in a single action brought by the bank on the note, the entries in the books of the bank were not admissible on the question involved, since they were only *res gestae* of the transaction and relation existing between the bank and the parties on the note, and for the further reason that such entries, having been made without the knowledge or consent of decedent or his cosigner, and without anything appearing on the face of the note to disclose their relation to each other, must have been based on a presumption or on information amounting to hearsay, and for the further reason that such entries, if properly made, would determine the relation of decedent and such cosigner, the main fact involved, and

to admit same on the theory of *res gestae* of the main fact would be to declare that the same is *res gestae* of itself.    p. 503.

13.  EVIDENCE.—*Private Writings.—Admissibility as Res Gestae.*—An entry that covers the whole transaction under investigation, and leaves nothing else to be proven in order to make it complete, is not admissible as a part of the *res gestae.*    p. 505.

14.  APPEAL.—*Review.—Admission of Evidence.—Voluntary Statement.*—In an action against an estate involving the question of whether a note given to a bank was executed by decedent and another as coprincipals, or whether the latter signed merely as surety, where the cashier of the bank, on cross-examination by counsel for the estate, voluntarily stated that the original loan had been arranged by decedent's cosigner on behalf of decedent, such voluntary statement was unfavorable to the estate, and, although no motion was made to strike out the same, did not authorize the court to permit counsel for such cosigner, on redirect examination, to elicit from the witness the conversation had with such cosigner at the time said loan was arranged, on the theory that the estate rested content with a favorable voluntary statement; nor was such reexamination proper on the theory that the estate had drawn from the witness a part of a conversation material to the issue, since such voluntary statement was not a part of a conversation, but was rather a conclusion consistent with the theory that the arrangement was made by letter, by messenger, or by conversation.    p. 505.

15.  APPEAL. — *Review. — Presumption as to Effect of Error.* — Where, on the trial of a cause by the court, evidence material to the issue was erroneously admitted, it will be presumed that the court, having admitted it, gave it consideration and weight. p. 506.

From Tippecanoe Circuit Court; *James P. Wason,* Special Judge.

Proceeding on a claim by the American National Bank against the estate of Jacob F. Marks, deceased, based on a note signed by decedent and Nicholas W. Box.  The claim, having been paid in part and disallowed in part by the administrator of decedent's estate, was transferred to the issue docket for trial.  From a judgment adverse to the estate, the administrator appeals.  *Reversed.*

*Haywood & Burnett* and *Byron W. Langdon,* for appellant.

*Kumler & Gaylord* and *Edgar D. Rudolph,* for appellee.

CALDWELL, J.—For a number of years prior to February
—, 1908, appellant's decedent, Jacob F. Marks, and appellee,
Nicholas W. Box, were residents of Lafayette, Indiana, and
each was a stockholder of the Muncie Gas, Light and Fuel
Company of Muncie, Indiana. Marks was an accommoda-
tion endorser on a note of said gas company for $5,000, dated
September 14, 1903, payable to and held by Taylor's Bank.
On January 16, 1904, Marks drew his individual check to said
bank for $1,100 in part payment of said note, leaving a bal-
ance of $3,900 thereof unpaid. February 18, 1904, Marks
and Box executed their ninety day note to the First National
Bank of Lafayette, in the sum of $3,900, the former's name
appearing first on the note, which note was renewed by the
execution of a new note in said sum May 21, 1904, and again
on August 22, 1904, which last note matured November 23,
1904, and which Marks paid December 6, 1904, by his indi-
vidual check in the sum of $3,968.90, on the American Na-
tional Bank of Lafayette in favor of Frank W. Spencer,
cashier of said First National Bank. On said December 6,
1904, Marks and Box executed their note to said American
National Bank for $4,120, running six months, with interest
at 8 per cent from maturity. This note was signed by
Marks and Box, Marks' name appearing first on the note.
The proceeds of this note were credited to Marks' individual
account at said American National Bank. On June 6, 1905,
Marks and Box renewed said note by the execution of a new
note maturing December 6, 1905, at which time said last
named note was renewed by the execution of the note in-
volved in this action. Said note in suit bears date of De-
cember 6, 1905, and is in the sum of $4,120, running six
months, payable to said American National Bank, with 8
per cent interest from maturity, and signed as follows: "J.
F. Marks, N. W. Box, Security."

The controversy in this action was whether Marks and
Box were comakers of said note as principals, or the latter
was surety for the former. The evidence does not indicate

that the term "security" or any like term was appended to
Box's name, as it appeared on any of said notes other than
the one involved in this action, but on the contrary, there
was some evidence to the effect that no qualifying term fol-
lowed Box's name on any of said other notes. There was
no satisfactory evidence that Marks at any time knew that
said term "security" followed Box's signature to the note
in suit. It is appellant's theory that in February, 1904, both
Marks and Box, believing that the paper of said gas com-
pany was good, and desiring, as stockholders, to promote its
interests, took up said note on which Marks was endorser
as aforesaid, and to procure the funds to do so, executed the
first of said $3,900 notes as comakers and principals, as afore-
said, and that they sustained a like relation to each of the
succeeding notes, including the note involved in this action.
Appellee, however, contends that his relation to each of said
notes, including the one in suit, was as surety for Marks.
Marks died on said — day of February, 1908, soon after which
time his administrator found among his papers said $5,000
note, on which Marks was accommodation endorser as afore-
said. This note had pinned to it, pencil memoranda in
Marks' handwriting, and signed by him, to the effect that
he and Box owned said note, and that Marks' interest therein
was $3,050 and Box's interest $1,950. After the decease of
Marks, said American National Bank, as the holder and
owner of the note in suit, filed it as a claim against Marks'
estate. The appellant, as administrator, allowed and paid
only the one-half of the amount due on the note on the theory
that Box, as beween him and said estate, was primarily liable
for the other half by reason of being comaker and principal
as aforesaid. In due course, said claim was transferred to
the issue docket of the Tippecanoe Circuit Court for trial,
in which court, on appellant's application, appellee Box was
made a defendant. Pleadings were filed, presenting the is-
sue of whether Box's relation to said note was as surety or
as coprincipal. Trial by the court, without a jury, resulted

in a finding and judgment in favor of said American National Bank, against both appellant and appellee for the full balance due on said note, and that said Jacob F. Marks was principal and said appellee Box was surety, with an order that the property of the estate be first exhausted before levying on the property of appellee. The appellant appeals from said judgment, assigning as error the overruling of his motion for a new trial.

The causes assigned for a new trial, and not waived in this court, pertain to the admission and exclusion of evidence. The evidence, aside from admissions, was largely circumstantial.

Complaint is made that the court refused to permit appellant, while on the stand as a witness in his own behalf, to testify that he knew of his own knowledge that his

1. decedent and Box were both interested as stockholders in said Muncie Gas, Light and Fuel Company. The question by which said evidence was sought was leading and suggestive, and called for the witness's conclusion, and the court's action was proper.

Said check drawn by Marks, under date of December 6, 1904, on said American National Bank, in favor of Spencer, cashier of said First National Bank, had a pencil

2. memorandum on it when it was produced at the trial, as follows: "O. K. take up note for Muncie Gas, Light and Fuel Co." By the fifth cause for a new

3. trial, error is predicated on the refusal of the court to permit said check, including said pencil memorandum, to be used in evidence. By the twelfth cause for a new trial, error is predicated on the exclusion of the memorandum alone. The record discloses that appellant offered in evidence the check "including the pencil memorandum." Over appellee's objection, the court admitted the check, but excluded the memorandum, and appellant reserved an exception. Appellant then offered the check, without the memorandum, and

it was admitted. Subsequently, appellant offered in evidence the memorandum alone, but it was excluded, and no exception reserved. It is apparent that the twelfth assignment of error in the motion for a new trial, predicated on the separate offer and exclusion of the memorandum, presents no question, for the reason that no exception was reserved. The fifth assignment challenges the ruling in excluding both the check and memorandum, but as we have said, only the memorandum was excluded. Under such a state of the record, the fifth assignment presents no question. *McLain* v. *Jessup* (1881), 76 Ind. 120; *Cleland* v. *Applegate* (1893), 8 Ind. App. 499, 501, 35 N. E. 1108; *Gray* v. *Elzroth* (1894), 10 Ind. App. 587, 593, 37 N. E. 551, 53 Am. St. 400; *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642, 664, 50 N. E. 877, 52 N. E. 399; *Indiana, etc., R. Co.* v. *Snyder* (1894), 140 Ind. 647, 649, 39 N. E. 912; *Mock* v. *City of Muncie* (1893), 9 Ind. App. 536, 542, 37 N. E. 281; *Logansport, etc., Gas Co.* v. *Coate* (1902), 29 Ind. App. 299, 302, 64 N. E. 638.

But if it should be conceded that the motion for a new trial properly presents the question of the exclusion of the memorandum alone, still the court committed no error 4. in excluding it. The evidence showed, and it was conceded that appellant's decedent drew said check and that it was used for the purpose of taking up the last of said three notes, each of which was in the sum of $3,900. As we have said, the relation that appellee bore to said notes was the only question in controversy. Appellant contended that the first of said notes was executed by Marks and Box as coprincipals to procure money to be used, and which was used, by them in the joint venture of taking up said $5,000 gas company note, on which there was a balance unpaid of $3,900, as aforesaid. Appellee contended that he was surety on said note, and while he admitted that he arranged for the loan, he claimed to have done so in behalf of Marks. Box did not undertake to explain the purpose for which said

money was borrowed or for which it was used. Appellant insists that said memorandum, if in evidence, would tend to connect the transaction with said gas company note. In order that such memorandum may be shown to have such a tendency, appellant is compelled to indulge a series of inferences, each dependent on the preceding one. It is necessary to infer that Box ascertained the amount due on said note that was paid by said check, and that he caused said check to be drawn, and to be delivered to Marks for signature, and that Marks thereupon wrote said memorandum on the check at the time when he signed the latter. These inferences must be indulged, although there is no claim that there was evidence to support them, or to establish any facts from which they may be deduced. The evidence showed that the body of the check was in the handwriting of the assistant cashier of the First National Bank. The signature and pencil memorandum were in the handwriting of Marks, and said check was found among his papers after his decease. The evidence did not show when said memorandum was written. There was no evidence to connect appellee with it or that he had seen it prior to the time when the controversy involved in this action arose. Under such circumstances, assuming that said memorandum might be construed to support appellant's contention, it is purely self-serving in its nature, and as such could not properly have been admitted in evidence over appellee's objection. Appellant cites in support of his position *Johnson* v. *Heagan* (1843), 23 Me. 329; *Jones* v. *Fales* (1808), 4 Mass. 245; *Benedict* v. *Cowden* (1872), 49 N. Y. 396, 10 Am. Rep. 382, and certain other decisions. These cases are to the effect that under the special circumstances therein involved, memoranda on the face of a written instrument are to be construed as a part thereof. Examination of said cases reveals that the maker of the contract involved in each case wrote some sort of a memorandum on the face thereof prior to or at the time of signing such contract, the effect of which was to modify the

contract as otherwise expressed, and the holding in each case is that such memorandum appearing on the contract as it goes into the hands of the obligee and is accepted by him must be construed as a part of such contract, and therefore as binding on him. The question presented by such decisions is very different from that involved here. If the memorandum here were of such a nature as to modify the check and if shown to have been written on said check before it went into the hands of the payee, and if this controversy were between appellant and said payee, then such memorandum might be construed as a part of said check and be binding on the payee, but such is not the case here. The court did not err in excluding said memorandum.

By the sixth cause for a new trial, appellant assigns that the court erroneously permitted Box to introduce in evidence a part of the liability note ledger of the American National Bank, showing the state of said Jacob F. Marks' account on March 5, 1906; and by the seventh cause, that the court permitted Box to show by George B. Thompson, cashier of said bank, as a witness, the state of said account on that day, and by the eighth cause, that the court permitted said Thompson, as a witness, to read from said book the state of said account on said day, and by the ninth cause, that the court permitted said witness to look at said book and state that Marks owed the bank on said March 1, 1906, one note for $400, one for $2,000 and one for $4,120, and that $120 of the $4,120 represented interest. The record discloses that said assignments refer to the same transaction. The state of the record is as follows: Mr. Thompson was called as a witness by appellee and in his preliminary examination testified among other things that he had been cashier and assistant cashier of said bank from the organization thereof. He then identified the liability note ledger of the bank, and was asked to state whose account appeared on page 225, to which question appellant objected, and by permission of the court developed from the witness

that the witness made the entries in said book, or that they were made under his supervision, and that Marks made none of them. Appellant then renewed his objection. Counsel for appellee then developed that the book was a regular book of the bank, kept correctly, and in due course, whereupon the court said: "I hold the books are competent evidence," and appellant excepted. Counsel for appellee then, by several questions, elicited other facts respecting the correctness and authenticity of the book, and then asked the following question: "You may look at the account of Jacob F. Marks, and state what notes or other indebtedness he was owing to the bank on the first day of March, 1906?" to which Mr. Thompson made the following answer: "Mr. Marks owed one note of $400, one of $2,000 and one of $4,120." In response to another question, he stated that the $120 of the $4,120 represented interest. To neither of said last two questions was any objection made. No objection was made except as above set out, and there was no ruling on either objection. The only exception reserved was to the court's voluntary statement that he held the books to be competent evidence, which statement might be construed to mean that the court held the books themselves to be competent evidence. If so, the books were not offered, and whether the court ruled correctly or incorrectly, no harm resulted. But, if the court's remarks should be construed to mean that the court thereby held that the examination from the books was proper, still this ruling or remark was followed by several questions going to the correctness and authenticity of the books, to none of which did appellant object, followed without objection, by the questions and answers above set out, by which, facts were developed respecting the state of said account at the time inquired about, and on which questions and answers appellant's said assignments in his motion for a new trial are based. Since said further preliminary examination was had after the last semblance of an objection, followed by said

questions that called for substantial evidence, and since no objection was made to such questions, the trial court had a right to presume, and this court may now presume, that appellant believed from said further preliminary examination that the evidence sought was relevant and admissible. We therefore hold that no question is presented by said sixth, seventh, eighth and ninth causes, for the reason that there was no objection made, and no exception reserved.

Appellant insists that the eighth assignment presents for review the examination of the witness Thompson, based on the discount register of said American National Bank,

6. whereby it was disclosed that said book indicated that Marks was maker and Box endorser of said note executed by them to said bank on December 6, 1904. The eighth assignment, however, does not present this question. As has been said, the eighth assignment is based on an examination of said witness respecting the condition of said liability note ledger, under date of March 1, 1906, and what said book showed respecting the state of Marks' account on that day, while the matter sought to be reviewed under said assignment is respecting the discount register under date of December 6, 1904. Moreover, were appellant correct in his contention, the examination last named, if erroneous, was harmless, when considered in its entirety. As has been said, the entry in said discount register respecting said note executed on December 6, 1904, was to the effect that Marks was maker and Box endorser, but the further examination of the witness was that in entering a note on said book, the person whose name appeared first on the note was entered as maker and the person whose name appeared second was entered as endorser, and that such was the practice of the bank, even though its officials knew that both signers were makers and coprincipals. There was no dispute that Marks' name appeared first on the note, and considering the entire examination as above set out, appellant could not have been harmed thereby.

By the tenth assignment, appellant complains that the court permitted Mr. Thompson, cashier of said American National Bank, to read in evidence from the liability note ledger of said bank, that $4,000 was credited to Marks' account, under date of December 7, 1904. Appellant, in said assignment erroneously used the term ''liability note ledger'' instead of ''individual ledger.'' Treating the assignment as sufficient, the record is as follows: ''Appellant introduced in evidence said check dated December 6, 1904, drawn by Marks, in payment of said $3,900 note held by said First National Bank. Box showed by the books of the American National Bank that the note in suit stood on said books as an obligation against Marks, on March 1, 1906. The evidence was in this condition when appellee introduced the evidence complained of by said tenth assignment, to the effect that on said December 7, 1904, $4,000 was credited to Marks' account in said American National Bank; that that said credit represented a transaction had on December 6, 1904, and was presumably the proceeds of the note dated December 6, 1904, which note was the first of the series in said bank, the note in suit being the last of such series, and each of which notes was shown to have been signed by both Marks and Box. In the same connection, the witness Thompson testified that he credited said $4,000 to Marks' account because his name appeared first on the note. Since appellant introduced in evidence said check signed only by Marks and drawn on said American National Bank in payment of said note so held by said First National Bank, on which appellant claims that Box was coprincipal, and thereby gave rise to an inference that Marks was sole principal on said note, appellant was beneficially affected rather than harmed by the evidence of which he now complains, to the effect that the cash back of said check was the proceeds of a note signed by both Marks and Box, and on which appellant claims Box was surety, and especially in view of the fact that Thompson testified as aforesaid that

he placed said credit in Marks' individual account only be-
cause Marks' name appeared first on the note.

While Mr. Spencer, cashier of said First National Bank,
was testifying as a witness in behalf of appellee, he identified
a certain book as a "bills receivable record" of said bank,
and testified that it was correctly kept, and in the regular
course of business, and was permitted to read in evidence
from said book, over appellant's objection, the account of
Jacob F. Marks, as contained therein, showing charged to
him said $3,900 note, dated February 18, 1904, and each of
said renewals thereof. By the eleventh assignment in the
motion for a new trial, appellant challenges the court's rul-
ing in admitting such evidence. In determining whether
or not the court erred in said ruling, it is necessary that the
nature of the controversy be kept in mind. It was admitted
that said series of three notes was executed to said bank by
both Marks and Box, and the sole point in dispute was
whether Box's relation to said note was as coprincipal or as
surety. Said evidence evidently was not admitted for the
purpose of showing that Marks was indebted to said bank on
said notes, since that was not controverted, but rather it was
admitted, presumably as an item tending to show that said
debt was the debt of Marks to the exclusion of Box, that is,
for its bearing on the controversy between Marks and Box,
which was a collateral controversy, when viewed from the
standpoint of the American National Bank or the First
National Bank.

The following propositions seem to be fairly well estab-
lished in this jurisdiction: That entries in duly accredited
account books, regularly made in due course of busi-
8.   ness, and as a part of the *res gestae* of the transaction
under investigation, are admissible in evidence; that
such entries are admissible when offered by a party to the
action and where so made by such party or so made by his
opponent, or by the representative of either, or by a third
person; such entries are admissible under some circumstances

regardless of whether the entrant is dead or absent from the jurisdiction or is present at the trial and testifies as a witness, the proper preparatory and suppletory evidence having been heard. *Indianapolis Outfitting Co.* v. *Cheyne Electric Co.* (1913), 52 Ind. App. 153, 100 N. E. 468; *State, ex rel.* v. *Central States Bridge Co.* (1911), 49 Ind. App. 544, 97 N. E. 803; *Johnson* v. *Zimmerman* (1908), 42 Ind. App. 165, 84 N. E. 541; *Place* v. *Baugher* (1902), 159 Ind. 232, 64 N. E. 852; *Fleming* v. *Yost* (1893), 137 Ind. 95, 36 N. E. 705; *Culver* v. *Marks* (1889), 122 Ind. 554, 23 N. E. 1086, 7 L. R. A. 489, 17 Am. St. 377; *Wilbur* v. *Scherer* (1895), 13 Ind. App. 428, 41 N. E. 837; *Glover* v. *Hunter* (1867), 28 Ind. 185; *Cleland* v. *Applegate, supra;* Gillett, Indirect and Collat. Ev. §§166, 173, *et seq;* Jones, Evidence (2d ed.) §§319, 320, 567, *et seq;* 1 Wharton, Law of Evidence (3d ed.) §678, *et seq;* 2 Wigmore, Evidence §1517, *et seq;* 17 Cyc. 392, *et seq;* 2 Ency. of Evidence 674. Respecting the books of third

9. persons, entries therein may be divided into two classes with reference to their admissibility in evidence. The first class consists of entries against the interest of the person making them; the second class consists of entries made contemporaneously with the principal fact done, and which are a part of the *res gestae* of such fact or a link in the chain of events that constitute such fact. An entry of the second class "is not merely the declaration of the party, but it is a verbal contemporaneous act belonging, not necessarily indeed, but ordinarily and naturally to the principal thing. It is on this ground that the latter class of entries is admitted, and, therefore, it can make no difference, as to their admissibility, whether the party who made them is living or dead." 1 Greenleaf, Evidence (14th ed.) §120; *McKeen* v. *Providence, etc., Bank* (1902), 24 R. I. 542, 54 Atl. 49. There are, however, some limitations to the

10. foregoing propositions. Thus, as has been said, the entries must belong ordinarily and naturally to the principal fact under investigation. *Sill* v. *Reese* (1874), 47

Cal. 294; 1 Greenleaf, Evidence (14th ed.) §120. It is some-times said that "there must have been a duty to do the very thing recorded. Secondly there must have been a duty to record or otherwise report the very thing." 2 Wigmore, Evidence §1524. The entries must have been made by a person having knowledge of the facts entered, or at least that the information was communicated to the entrant by some person engaged in the business, whose duty it was to transact the particular business, and make report thereof for entry. 17 Cyc. 393; *State, ex rel.* v. *Central States Bridge Co., supra; Over* v. *Dehne* (1906), 38 Ind. App. 427, 436, 75 N. E. 664, 76 N. E. 883; *Union Electric Co.* v. *Seattle Theatre Co.* (1897), 18 Wash. 213, 51 Pac. 367. Such entries are not admissible to prove any collateral matter, as that a third person assumed to pay the debt sued for; or to prove an agency; or to show that goods were delivered or received to sell on commission; or to prove a special agreement or the terms thereof, or the delivery of goods under such an agreement; or to show that defendant received the consideration of a note where the defense was fraud in its inception; or that work was done for defendant rather than a third person; or that credit was extended to a particular person where that transaction is not in issue; or to prove that a partnership existed between defendant and a third person where work and labor was done for such third person; or that a certain loan was made to defendant personally, rather than through him as agent for a third person. *Lyman & Co.* v. *Bechtel & Ross* (1880), 55 Iowa 437, 7 N. W. 673; *Gorman* v. *Montgomery* (1861), 83 Mass. 416; *Lyon* v. *Phillips* (1884), 106 Pa. St. 57, 66; *Kayser* v. *Alexander* (1887), 144 Mass. 71, 78, 12 N. E. 209; *Paine* v. *Ronan* (1887), 6 N. Y. St. 420; *Mitchell* v. *Balknap* (1844), 23 Me. 475; *Soper* v. *Veazie* (1850), 32 Me. 122; *Walker's Estate* v. *Yeatman* (1848), 5 Har. (Del.) 267; *Textile Pub. Co.* v. *Smith* (1900), 64 N. Y. Supp. 123, 31 Misc. 271; *Peck* v. *Von Keller* (1879), 76 N. Y. 604; *Outram* v. *Morewood* (1793),

5 T. R. 121; Jones, Evidence (2d ed.) §574; 1 Wharton, Law of Evidence (3d ed.) §685; 17 Cyc. 379, 383.

We shall now endeavor to view the question under consideration in the light of the foregoing principles. The relation that existed between Marks and Box respecting said series of notes held by said First National Bank was collateral to the relation that existed between them and said bank. *Sefton* v. *Hargett* (1887), 113 Ind. 593, 595, 15 N. E. 513; *Porter* v. *Waltz* (1886), 108 Ind. 40, 8 N. E. 705. Their relation to the bank grew out of the execution of the notes to the bank, and the payment of the proceeds to them, while their relation to each other respecting said notes grew out of some understanding or transaction had between themselves. Such relation, in this respect, that is, in so far as concerns the manner of its origin, was similar to that of the relation of principal and agent, or of a partnership. True, that the rights of said bank as against Marks and Box, and their rights as between themselves might have been determined in a single action brought by the bank on the notes. In such an action, however, Marks and Box could not have submitted their relation as between themselves for determination, were it not for the statute providing for the trial of suretyship. Such statute recognizes that the cause of action of the holder of the note or contract sued on against those who executed it is distinct from the cause of action of such persons as between themselves to try the question of suretyship, by providing in substance that the latter proceeding shall not affect the former. §1269 Burns 1908, §1212 R. S. 1881. It is expressly held that the proceeding to determine the question of suretyship is a new and original proceeding independent of that of the plaintiff on the contract. *Joyce* v. *Whitney* (1877), 57 Ind. 550, 557. If then, the relations we are discussing are separate and distinct transactions, it would seem that a fact done in one of these transactions would scarcely be *res gestae* of the other, and the entries in the books of the bank could be *res*

*gestae* only of the transaction and relation between the bank and Marks and Box, and that such entries could not be *res gestae* of the transaction and relation between Marks and Box, especially where, as here, such entries were apparently made without the knowledge or consent of Marks and Box. Only the relation between Marks and Box is being investigated in this action, the relation between them and the bank being only incidentally involved; and it seems apparent that the entry complained of being *res gestae* only of the latter relation was not properly admissible in evidence. Such conclusion appears to be inevitable from the following:   For reasons heretofore given, said entry presumably was admitted as an item of evidence tending to show that Marks was sole principal on said original note.   There was nothing on the face of said note to indicate that Marks and Box bore any other relation to each other than as coprincipals.   Hence if the cashier or bookkeeper entered said note as a charge against Marks alone, and thereby caused the books to declare that Marks alone was principal, he must have acted on mere presumption or received his information from some extraneous source.   There was no claim that he received such information from Marks, and hence it must have been from some other source.   Such information was therefore hearsay, and a book entry based thereon could not rise above the dignity of hearsay.   Moreover, as we have said, the real transaction in issue here is the transaction involving the relation of Marks and Box, as between themselves, or their relation, as between themselves, to said series of notes, and consequently to said first note.   If said first note was properly charged to Marks alone, such fact amounts to more than an item of evidence, tending to determine such relation.   If properly so charged, it determines such relation, for it would carry with it the inference that Marks was entitled to receive, and that he did receive the proceeds of the note.   It, therefore, follows that for all practical purposes the fact disclosed by the entry is as broad as the principal fact done, and that to admit the

entry on the theory that it is *res gestae* of the main fact would be to declare that said entry is *res gestae* of itself.

A fact cannot be *res gestae* of itself. "An entry that

13. covers the whole transaction and leaves nothing else to be proven in order to make it complete is not admissible," as a part of the *res gestae*. *Sypher* v. *Savery* (1874), 39 Iowa 258; *McKeen* v. *Providence, etc., Bank, supra.* We, therefore, hold that the court erred in admitting said book entry.

While the witness, Spencer, cashier of said First National Bank, was being cross-examined by appellant's counsel, he

14. made a voluntary statement respecting the original loan at that bank, to the effect that Box arranged for the loan in behalf of Marks, using the language "Mr. Box arranged for him." No motion having been made to strike out said voluntary statement, counsel for appellee was permitted, over objection, to draw from the witness on reëxamination the full details of the conversation had by Box, with the witness, in the absence of Marks, wherein and by which Box claimed that he was making said arrangement for Marks. By such conversation, the agreement to make the loan was perfected. After the court had overruled the objection to the question calling for the conversation, and before the conversation was detailed by said witness, appellant's counsel moved to strike out said voluntary statement, which motion was overruled. The witness then having detailed the conversation, appellant's counsel moved to strike same from the record, which motion was overruled. Proper exceptions were reserved. The thirteenth and fourteenth causes for a new trial respectively challenge the court's rulings in admitting and refusing to strike out said conversation. It will be observed that said voluntary statement is unfavorable to appellant, rather than favorable, and the reëxamination cannot be justified on the theory that appellant rested content with a favorable voluntary statement. Aside from said voluntary statement as a basis, it is not contended

that the court properly admitted said conversation on reëxamination.    Such a contention if made would be futile, since the testimony elicited is ·purely self-serving.    Appellee's counsel justifies said rulings, however, only because of said voluntary statement, and under the principle that where one party draws from the witness a part of a conversation material to the issue, the other party is entitled to develop the remaining part of said conversation if material and pertinent.    Said voluntary statement is not a part of a conversation.    It is consistent with the theory that said arrangement was made by letter, by messenger or by a conversation. Rather than a part of a conversation, it is the witness's conclusion of fact from evidentiary facts not disclosed.    The court's rulings cannot be upheld on the grounds claimed, or on any legitimate grounds.    The following authorities bear somewhat on this question.    *Caywood* v. *Farrell* (1898), 175 Ill. 480, 51 N. E. 775; *Brown* v. *City of Aurora* (1883), 109 Ill. 165; *Pearlmutter* v. *Hyland St. R. Co.* (1877), 121 Mass. 497; *Kilgore* v. *State* (1899), 124 Ala. 24, 27 South. 4; *People* v. *French* (1892), 94 Cal. 371, 30 Pac. 567; *Cone* v. *Smyth* (1896), 3 Kan. App. 607, 45 Pac. 247; *Taylor* v. *Commonwealth* (1892), 18 S. W. (Ky.) 852; *Brusberg* v. *Milwaukee, etc., R. Co.* (1882), 55 Wis. 106, 12 N. W. 416.    The matter drawn out on said reëxamination was material.

15. It went straight to the issue.    It will be presumed that the court having admitted it gave it consideration and weight.    We hold that in admitting said conversation and in refusing to strike it out, the court materially erred.

For errors of the court as indicated in this opinion, the judgment is reversed, with instructions to sustain the motion for a new trial.                                    .

Note.—Reported in 103 N. E. 27.    See, also, under (1) 40 Cyc. 2422, 2435; (2) 2 Cyc. 722; (3) 29 Cyc. 947; (4) 16 Cyc. 1200-1206; (6) 38 Cyc. 1419; (7) 38 Cyc. 1411; (8) 17 Cyc. 365, 387; (10) 17 Cyc. 377, 391; (14) 40 Cyc. 2522; (15) 13 Cyc. 386.    As to admissibility in evidence of books of account, see 138 Am. St. 441.

As to admissibility against third persons, of books, reports and the like, other than books of account, see 125 Am. St. 841. As to admissibility of books of account as evidence between other parties, see 53 L. R. A. 513. As to a party's books as evidence in his own favor, see 52 L. R. A. 545. As to the admissibility in evidence of the books of account of a deceased party, see 12 Ann. Cas. 77.