Cunningham, P. J.
We shall refer to the plaintiffs in error here as defendants, and the defendant in error as plaintiff.
The facts out of which this controversy grew are simple. James S. Carnahan, an attorney at law, and a member of the firm of Carnahan & Van Hoorebeke, was employed to defend one Clare Young, who stood charged, in the District Court of Montrose County, with a serious offense. Carnahan rendered the services for which he was employed, and there remained due his firm a balance for such service, upon which, after the death of both members of the firm, this action was brought against the defendants.
There is but a single question for our determination, namely, are the defendants, or any of them, liable for the balance justly due on the services rendered by Carnahan for the said Clare Young? The defendants are uncles of Clare Young.
*333 The action was brought upon the theory that Carnahan was employed by the defendants, and the trial court so found, and rendered judgment accordingly. It is contended in this court, on behalf of plaintiff, that the record before us supports the findings and judgment of the trial court.
Except upon formal matters Mrs. R. A. Young, sister-in-law of the defendants, and mother of Clare Young, for whom the services were rendered, was the only witness called by the plaintiff. She testified unequivocally that none of the defendants ever agreed with her that they would pay or become responsible for Judge Carnahan’s fee, and she further testified that while she had always intended to employ Judge Carnahan, or have him defend her son, that she was obliged, because of illness in her family, to leave the arrangements for his employment with her brother-in-law, Lafe Young, who, she says, represented her in his negotiations with Judge Carnahan. It appears that Judge Carnahan’s retainer was paid at the time he was employed, at any rate, before the trial, and this money, though delivered by Lafe Young to Judge Carnahan, represented a check which Mrs. R. A. Young had sent Lafe for that purpose.
Aside from Mrs. Young’s testimony, to which we have already referred, the only other evidence offered on behalf of plaintiff consists of the day-book of the law firm of Carnahan and Van Hoorebeke, two letters written by Mrs. R. A. Young, one to Judge Carnahan, and one to his widow, and a purported carbon copy of a letter which plaintiff insists was written and mailed to the defendant, Lafe Young. The admissibility of each of the aforesaid exhibits was challenged on the trial by apt objections, and our determination of the case must turn entirely upon their admissibility.
In her letter to Judge Carnahan Mrs. R. A. Young says:
“Lafe told me that if I would raise the retaining fee, $300, he and the other boys would pay your- expenses during Clare’s trial.”
*334 This is the strongest, if not the only, sentence in Mrs. Young’s short letter, which, in any way, tends to bind the defendants. It is too clear to justify discussion that liability cannot be fixed upon these defendants, or any of them, by evidence of this sort.
The second letter, written by Mrs. Young to Mrs. Carnahan, and which was also admitted in evidence, contains nothing whatever which, in the remotest degree, tends to fix liability upon the defendants, or any .of them.
From what we have said it is apparent that the letters of Mrs. R. A. Young were without probative value, and the objection to their admission ought to have been sustained.
Exhibit “E,” which was offered and admitted, appears to be an unsigned carbon copy of a letter written by Judge Carnahan to Lafe Young. Shortly before the trial this letter was found in the letter file of Judge Carnahan’s old firm. From this copy it appears that Carnahan wrote Lafe Young a letter, addressing him at Fruita, Colorado, Carnahan’s office being in Grand Junction. In this letter Young was reminded that in a previous conversation he (Young) had had with Carnahan at the latter’s office, Young had repudiated any responsibility for the balance due Carnahan. The letter is too lengthy to be quoted here, but therein Judge Carnahan insists that Young and his brothers must pay the balance of his fee or that suit would be entered against them and their sister-in-law, Mrs. R. A. Young.
The only evidence that this letter was ever mailed was the testimony of Mr. Griffith, who succeeded Van Hoorebeke as a partner of Judge Carnahan. Griffith testified that the custom of the office was that letters were dictated to the stenographer, who made the original and one carbon copy, and every evening about 5 o’clock the originals were presented to the person who dictated them and they were signed, stamped and mailed, the carbon being put in a letter file.
*335 The stenographer was not called, nor does there appear any explanation for her ahsence from the trial as a witness. The carbon copy contained the initials of Mr. Griffith, who was a member of the firm at the date it bore, thus indicating, as he says, that he had dictated the letter, but he denied having done so, and stated that the stenographer must have been in error. There was no proof as to where Lafe Young, was living at the date the letter was written, or that he ever received the letter, or that the original was not returned because uncalled for. On the stand Young denied all knowledge or recollection of having received such a letter. There was clearly no sufficient foundation for the admission of this exhibit, hence the same should have been excluded for that reason, if for no other.
The only evidence offered or admitted in the case which we have not already considered is the day-book of the firm of Carnahan and Van Hoorebeke, showing charges made against “Young Bros.,” “Ed Young and Lafe Young,” “Lou Young, Lafe Young and Ed Young, Dr. to trial Clare Young,” and credits to “Lafe Young, retainer fee for Clare Young,” and other charges and credits of similar character. The question of the admissibility of the aforesaid day-book is debated in the briefs with unusual skill. On the trial (which.was to the court without a jury) the learned judge, when the day-book was offered in evidence, made the following statement:
“I am satisfied that the rule in cases of this kind is that where services were rendered A, or purported to have been rendered A, at the request of B, that standing alone the books of the plaintiff in such case, without evidence tending to show the employment, would not be admissible, but if there is evidence, direct or circumstantial, which shows that B, or tends to show that B, gave the plaintiff to understand that the services were being rendered for him, or that he would pay for them, that then you may turn *336 to the books as to the value of the service or as to other things which the books may show.”
We agree with the view of the trial judge, and shall presently cite numerous authorities in support thereof, but for reasons already stated we are unable to discover in the record any competent evidence or testimony tending to support the exception to which the court refers; that is, tending to prove that any of the defendants gave Judge Carnahan to understand that the services were being rendered for them, or that they, or any of them, would pay for the same. It is not shown by the record that Judge Carnahan ever had any negotiations whatever with Lou or Ed Young, or in any manner ever communicated with them. Exhibit “E,” the carbon letter that was introduced, if it is proper to consider it. for any purpose, shows that Lafe Young repudiated all responsibility for the debt in a talk he had had with Judge Carnahan, and on the stand he unequivocally denied having ever agreed to pay the debt or any part of it.
The rule as to the admissibility of day-books under circumstances such as we have here under consideration is thus stated by the Supreme Court of Massachusetts in Kaiser v. Alexander, 144 Mass., 78, 12 N. E., 209:
“It is settled in this commonwealth that although the books of original entry of a party are ample to prove the sale and delivery of goods, such books are not competent to prove to whom credit was given, where that fact is in issue. Keith v. Kibbe, 10 Cush., 35; Gorman v. Montgomery, 1 Allen, 416; Dexter v. Booth, 2 Allen, 559; Field v. Thompson, 119 Mass., 151.”
It appears that the rule in Massachusetts, as stated above, has prevailed from an early day, and the rule announced in the Kaiser case, which has been cited with approval by many courts, was adhered to down to the case of Brooks v. Wilson, 218 Mass., 205, 105 N. E., 607; decided in 1914, when that court was forced, by a statute adopted Ihe year previous, to recede from its previous policy.
*337 Commenting on the Massachusetts statute, which makes an entry in an account kept in a book admissible in any civil proceedings as evidence of the facts therein stated, the Massachusetts Supreme Court, in the Brooks case, says:
“This is an exception to the general rule as to the admissibility of self-serving statements made by a party to an action in court. Why this exception should have been made is not apparent.”
For other authorities supporting the conclusion which we have reached that the day-book offered, in the circumstances of this case, was not admissible, see: Peck v. Keller, 76 N. Y., 604; Churchill v. Hebden, 32 R. I., 34, 78 Atl., 337; Marks v. Box, 54 Ind. App., 487, 103 N. E., 33; Atlas Shoe Co. v. Bloom, 209 Mass., 563, 95 N. E., 952; Jones on Evidence (2nd Ed.), Sec. 574; Wigmore on Evidence, Sec. 1540; Stidger v. McPhee, 15 Colo. App., 252, 62 Pac., 332.
In the last case cited it was expressly ruled that one cannot prove that credit was given to a particular person by entries made in a tradesman’s books.

Reversed.